The document below is hereby signed.

Signed: August 2, 2013



_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
GB HERNDON AND ASSOCIATES,     )   Case No. 10-00945
INC.,                          )   (Chapter 7)
                               )   Not for Publication in
                Debtor.        )   West's Bankruptcy Reporter

MEMORANDUM DECISION RE SPECIAL
COUNSEL'S APPLICATION FOR FEES AND REIMBURSEMENT OF EXPENSES

This addresses the amended application of Polsinelli

Shughart PC ("Polsinelli"), seeking an award of $345,785.83 in

fees and reimbursement of $9,175.10 in expenses.[1]  _See_ Dkt. No.

170.  Polsinelli's application is for services it provided as

special counsel to the debtor, GB Herndon and Associates, Inc.,

as a debtor in possession while this case was pending as a case

under Chapter 11 of the Bankruptcy Code (11 U.S.C.),

specifically, from September 24, 2010 (when the case began as a

Chapter 11 case) and until the case was converted to a case under

_____

[1]  The court previously rendered a preliminary oral decision
regarding the application, pending the filing of a fee
application by another attorney.  This decision supplants that
oral decision except where otherwise noted.

Chapter 7 of the Bankruptcy Code on November 3, 2011.[2]  In
contrast to Polsinelli, the debtor in possession's bankruptcy
counsel, Richard Gins, sought and was awarded only $35,995.00 in
fees plus costs and expenses of $175.00.

As discussed later, Polsinelli was employed to represent the
debtor in possession with respect to (1) the sole adversary
proceeding in the case, a civil action that was removed from the
Superior Court of the District of Columbia, and (2) a motion for
relief from the automatic stay to permit foreclosure against the
debtor's principal asset (a motion, which at one point, might
have been affected by the liability issues being addressed in the
adversary proceeding).  The adversary proceeding was relatively
straightforward, and the issue of liability was disposed of by
way of partial summary judgment well before the hearing on the
motion for relief from the automatic stay.  Polsinelli played a
minor role with respect to that motion for relief from the
automatic stay, with Gins being the attorney arguing against the
motion at the hearing on the motion.

Polsinelli was also representing the two guarantors of the
debtor's mortgage indebtedness, and often its billings relate to

---

[2]  As a debtor in possession, the debtor was (with
exceptions of no relevance here) vested with the rights and
powers of a trustee and required to perform the functions and
duties of a trustee serving in a Chapter 11 case.  *See* 11 U.S.C.
§ 1101(1) and 1107(a).  Among the rights of a trustee (and thus
of a debtor in possession) is the right to employ counsel
pursuant to 11 U.S.C. § 327.

work done for the benefit of those two guarantors, and not for the benefit of the bankruptcy estate.

Premier Bank, Inc. objected to the application.  Premier Bank, Inc. is the successor in interest to Adams National Bank, and for ease of discussion, I will refer to the two entities as the bank.

On November 15, 2012, the court held a hearing on Polsinelli's application for compensation.  On November 16, 2012, the court issued an oral interim decision pending the filing by Gins of his application for compensation and pending the court's further scrutiny of Polsinelli's work for its reasonableness. After Gins filed his application for compensation on February 20, 2013, the court held another hearing on Polsinelli's application for compensation on April 24, 2013.  The court has now approved Gins' application for compensation and has further scrutinized Polsinelli's time records.  For the reasons that follow, the court disallows $180,617.62 in fees and $255 in expenses.

I

THE EVENTS LEADING TO THE FILING OF THE CASE

These were the circumstances that gave rise to the commencement of this case.  The debtor owned real property located at 915-935 Twelfth Street, NE, Washington, D.C., and an affiliate, Twelfth Street Partners, L.L.C., owned certain modular units manufactured and being stored in Pennsylvania that the

debtor intended to place on the property.  The bank was financing the debtor's attempt to develop the real property, and held a mortgage against the real property securing its financing. Gloria B. Herndon, Ph.D. (the debtor's sole shareholder), and Twelfth Street Partners, L.L.C. (another company solely owned by Dr. Herndon), were guarantors of the debt owed the bank.

The project did not go well.  As of October 30, 2009, the bank's loan to the debtor had matured and the loan was in default.  Of great significance with respect to how the case fared in the bankruptcy case, and the quality of the services rendered by Polsinelli, is a forbearance agreement with the bank that the debtor executed on December 22, 2009, in exchange for the bank's forbearing from enforcing its enforcement rights until March 30, 2010.  *See* Ex. 2 to Dkt. No. 8, Adv. Proc. 10-10052. In that agreement, the debtor:

- waived claims against the bank,

- agreed that the bank was not required to make any further advances,

- agreed to the amount of principal and interest owed as of December 7, 2009,

- waived any right to a jury trial in any litigation between the parties arising out of the lending relationship,

- waived the protection of the automatic stay if the

4

debtor filed a bankruptcy case, and

- agreed that the debtor would engage a general contractor, acceptable to the bank in its sole and absolute discretion, to complete the eight townhouse units located on the property by December 28, 2009.

The debtor entered into a contract with Ambris Construction and Home Improvement, L.L.C., to complete the construction and the debtor alleges that Ambris botched the job.

The debtor failed to pay the bank by the extended deadline of March 30, 2010. On May 5, 2010, the bank sent the debtor and the two guarantors a notice of default, and on May 13, 2010, it filed against them in the Superior Court of the District of Columbia a complaint for a monetary judgment. Polsinelli served as the defendants' counsel in that civil action starting in August 2010.

The bank set a foreclosure sale for the afternoon of September 24, 2010. The defendants filed a motion for a temporary restraining order on September 21, 2010, seeking to stay the foreclosure sale. On September 24, 2010, the Superior Court denied the defendants' motion for a temporary restraining order against the foreclosure sale, and set a status hearing for September 29, 2010. Seven minutes before the scheduled time of the foreclosure sale on September 24, 2010, the debtor filed its voluntary petition commencing this bankruptcy case, thereby

5

staying the foreclosure sale.  Pursuant to 11 U.S.C. §§ 1101 and

1107(a), the debtor served as a debtor in possession, exercising

the powers of, and generally subject to the duties of, a trustee

until the case was converted to Chapter 7.

II

INADEQUATE TIME RECORDS

Pursuant to 11 U.S.C. § 330(a)(1), the court may award

"reasonable compensation for actual, necessary services rendered

by [a] . . . professional[.]"  The bank objected, in part, that

Polsinelli failed to provide complete time records, and, indeed,

the time records contain numerous vague descriptions of tasks.

The bank further objected that Polsinelli failed to identify with

specificity the time spent on particular tasks (having lumped

multiple tasks together with no indication of the time spent on

each task).  Despite those objections, Polsinelli failed to put

on any evidence to provide greater specificity for the time

entries.  The bank raised other objections, including questioning

the benefit to the estate of the work performed.

Polsinelli's fee application is subject to Local Bankruptcy

Rule 2016-1.  In addition, Polsinelli agreed, incident to the

application to authorize its employment, that it would seek fees

in compliance with the United States Trustee's fee guidelines

("United States Trustee's Guidelines").  Under LBR 2016-1,

"'project billing' is presumptively required when the application

6

seeks in excess of $50,000," and obviously time spent on tasks in the main case versus tasks in the adversary proceeding ought to have been treated as different projects.  The United States Trustee's Guidelines are to similar effect:

> (4) Project Billing Format.
>     (I) To facilitate effective review of the application, all time and service entries should be arranged by project categories. The project categories set forth in Exhibit A should be used to the extent applicable. A separate project category should be used for administrative matters and, if payment is requested, for fee application preparation.
>     (ii) The United States Trustee has discretion to determine that the project billing format is not necessary in a particular case or in a particular class of cases. Applicants should be encouraged to consult with the United States Trustee if there is a question as to the need for project billing in any particular case.
>     (iii) Each project category should contain a narrative summary of the following information:
>         (A) a description of the project, its necessity and benefit to the estate, and the status of the project including all pending litigation for which compensation and reimbursement are requested;
>         (B) identification of each person providing services on the project; and
>         (C) a statement of the number of hours spent and the amount of compensation requested for each professional and paraprofessional on the project.
>     (iv) Time and service entries are to be reported in chronological order under the appropriate project category.

28 C.F.R. Pt. 58, App. A, (b)(4).  The application should at the very least have had separate categories for each separate

7

litigation, including the lift stay litigation.[3]

Polsinelli did not comply with the United States Trustee's
Guidelines or LBR 2016-1.  As the bank noted, the application
often failed to distinguish between time spent addressing issues
in the adversary proceeding versus time spent addressing issues
in the main bankruptcy case.  The consequence is that time spent
on tasks in the main case that were of no benefit to the estate
has often been lumped together with time spent on compensable
work on issues in the adversary proceeding, and vice versa.  In
addition, there were often two motions being addressed at the
same time, but the time entries often fail to identify the
particular motion being addressed.

As to the time spent on each task, LBR 2016-1(a)(7) requires
that an application indicate "the amount of time spent in

---

[3]  Exhibit A to the United States Trustee's Guidelines
suggests that a fee application have separate project categories
for, among other things:

   FEE/EMPLOYMENT APPLICANTS: Preparation of employment
   and fee applications for self or others . . . .

   LITIGATION: There should be a separate category
   established for each matter (e.g. XYZ Litigation).

   MEETINGS OF CREDITORS: Preparing for and attending the
   conference of creditors, the § 341(a) meeting . . . .

   RELIEF FROM STAY PROCEEDINGS: Matters relating to
   termination or continuation of automatic stay under
   § 362.

28 C.F.R. Pt. 58, App. A, Exhibit A.

performing each service," and the application here often failed

to do that.  The United States Trustee's Guidelines required that

tasks be described with sufficient detail that the nature of the

tasks are clear and justified, and that the time allotted to each

task can be identified:

> (v) Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour. **Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry**; however, tasks performed in a project which total a de minimis amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate. Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the **nature of the communication**. Time entries for court hearings and conferences should **identify the subject of the** hearing or **conference**. **If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees.**

[Emphasis added.] *See also In re Recycling Indus., Inc.,* 243 B.R.

396, 406 (Bankr. D. Colo. 2000) (stating that the practice of

lumping tasks together is "universally disapproved" by bankruptcy

courts) (quoting *In re Leonard Jed Co.,* 103 B.R. 706, 713 (Bankr.

D. Md. 1989)).  It is impossible for this court to evaluate the

reasonableness of time records that lump together multiple tasks

and lack sufficient detail.  *See Role Models Am., Inc. v.*

*Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) ("[M]any time

records lump together multiple tasks, making it impossible to

evaluate their reasonableness.").

Moreover, LBR 2016-1(a)(4) requires:

a brief narrative statement concerning the services
performed, the total time spent performing the services,
and the results achieved, including, in the case of an
attorney, how the attorney's efforts have contributed to
the estate (in light of its present status and the
anticipated additional time and fees that will be
necessary to conclude the case)[.]

Polsinelli's application fails to include a narrative statement
addressing the different categories of work that were performed
and how each of those categories benefitted the estate.
Moreover, with Polsinelli having failed to engage in project
billing, it is often impossible to accurately assay the fees
attributable to particular categories of work.  The court cannot
determine whether services were reasonable or necessary where the
time records do not identify the subject matter of the work that
was billed for.  *See In re Smuggler's Beach Props., Inc.*, 149
B.R. 740, 743 (Bankr. D. Mass. 1993).

In addition, there are numerous instances of multiple
attorneys attending to the same tasks, including, for example,
two attorneys billing for the same conference or for attending
the same hearing.  "In the absence of justification, the presence
of multiple attorneys is not compensable." *In re Smuggler's
Beach Props., Inc.*, 149 B.R. at 745; *see also In re Racing
Servs., Inc.*, No. 04-30236, 2004 WL 2191585, at *4 (Bankr. D.N.D.
July 14, 2004) ("Reduction in fees is warranted if multiple
attorneys from the same firm attend the same hearing unless

10

counsel adequately demonstrates that each attorney present at the hearing contributed in some meaningful way."). This was a case that Polsinelli over-lawyered.

As set forth below, the failure to comply with the LBR and with the United States Trustee's Guidelines has often resulted in Polsinelli not carrying its burden of proving the reasonableness of the fees it seeks.

III

ORDER AUTHORIZING POLSINELLI'S EMPLOYMENT AS
SPECIAL COUNSEL IS EFFECTIVE AS OF THE PETITION DATE

Polsinelli did not file, on behalf of the debtor, an application to employ Polsinelli as special counsel until January 5, 2011. The application was deficient and after a series of amendments of the application, the court finally approved the application on March 30, 2011. The application sought authorization for employment *nunc pro tunc* as of the petition date, and the court granted the application. (The order itself was silent regarding *nunc pro tunc* employment being authorized.) At the hearing on Polsinelli's application for compensation, I decided that Polsinelli should not receive compensation for work performed prior to filing its application. However, for the following reasons, I withdraw my oral ruling in that respect and determine that Polsinelli's employment application is authorized *nunc pro tunc* as of the petition date.

The issue of *nunc pro tunc* effectiveness of the order is

really one of whether compensation is to be authorized on a *nunc
pro tunc* basis, and is one to be addressed when fees are sought.
Ordinarily, I carve out issues of *nunc pro tunc* employment (that
is, employment preceding the filing of the application for
employment) as a compensation issue to be addressed when the
applicant seeks compensation, but, with the proposed order itself
being silent regarding *nunc pro tunc* employment, I lost sight
that there had been a long delay in Polsinelli's seeking to be
employed and that the application addressed the *nunc pro tunc*
issue.  When I signed the order, I did not indicate that the *nunc
pro tunc* issue was to be addressed when fees were sought.

Nevertheless, the court could deem the employment order as
ineffective to adjudicate the *nunc pro tunc* issue as an issue
that is to be addressed when compensation is sought.  However,
the bank, the only non-insider creditor adversely affected by any
award of compensation,[4] did not object to the employment
application, and did not object to the fee application based on
the delay in seeking authorization for Polsinelli to be employed.

Accordingly, I will treat the employment *as special counsel*
effective as of the petition date, and withdraw my oral ruling to
the contrary.  Still, the 103-day delay in seeking authorization
of employment was unwarranted, and reflects adversely on the

---

[4]  Incident to obtaining relief from the automatic stay, the
bank agreed to pay the relatively modest unsecured non-insider
creditor claims listed in the case.

quality of Polsinelli's performance in the bankruptcy case.[5]

IV

HOURLY COMPENSATION

The bank objected, in part, that Polsinelli had not shown that its fees were at a reasonable hourly rate.  I addressed that issue in my oral decision[6] and adopt that part of the oral decision as my ruling in that regard, fixing the reasonable hourly rate for William D. Blakely (WDBLA in the time entries) at $480 (versus $490 billed)[7] based on so-called Laffey Matrix data (in the absence of other evidence) regarding what attorneys of comparable experience charge, and leaving the other attorneys' hourly rates unaltered.[8]

---

[5]  Section XXI of this decision addresses the issue of reducing fees based on failure to comply with the Rule 2016(b) obligation to disclose agreements regarding the payment of the fees.

[6]  The oral decision was issued on November 16, 2012.

[7]  The amended application to employ Polsinelli (Dkt. No. 76) further supports reducing Blakely's hourly rate.  In Polsinelli's engagement letter to Dr. Herndon (Dkt. No. 76-2, at p. 14 of 19), which is attached to the debtor's amended application to employ Polsinelli as special counsel, Blakely states that his current hourly rate (as of November 9, 2010) was $485.00, but the time records show that he billed at a rate of $490.00 for this period.

[8]  The other Polsinelli attorneys who worked on the case included:

    Lauren P. DeSantis-Then (LPDES in the time entries);
    Jay Switzer (JLSWI in the time entries);
    Joseph Heschmeyer (JAHES in the time entries); and
    Jean Soh (JESOH in the time entries).

13

Blakely's allowed time entries (those that are not disallowed or reduced in this decision) total 262.275 hours. Because these hours were billed at $10 per hour more than a reasonable hourly rate, I will disallow **$2,622.75** ($10 x 262.275) with respect to these time entries.[9]

V

POLSINELLI'S COMPENSATION IS LIMITED TO SPECIAL COUNSEL TASKS

Richard H. Gins served as the debtor's attorney in the bankruptcy case. Polsinelli was employed as special counsel for the debtor pursuant to 11 U.S.C. § 327(e), which permits a trustee (or a debtor in possession exercising the powers of a trustee) to employ:

> **for a specified special purpose, other than to represent the trustee [*i.e.*, the debtor in possession] in conducting the case**, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

[Emphasis added.] Polsinelli is not entitled to compensation for becoming involved in the general management of the bankruptcy case. *See In re ACT Mfg., Inc.*, 281 B.R. 468, 484 (Bankr. D. Mass. 2002) (noting "the Court cautions special counsel who

---

[9]   The court arrived at the 262.275 figure by taking the sum of Blakely's hours that this court had not already reduced or disallowed in full. For instance, the court did not include Blakely's hours during the period of March 1, 2011 through May 26, 2011. *See infra,* Section XX.B. In addition, this figure does not include the hours that the court has already adjusted for the $480 rate. *See infra,* Section XI.

become involved in the management of the bankruptcy cases, rather than confine their involvement to the matters for which they were retained, that they put their fees at risk."). Gins was already employed for that purpose, and as special counsel Polsinelli was not authorized to represent the debtor in possession in conducting the case. For the following reasons, Polsinelli's compensation is limited to those tasks that were special counsel tasks.

## A. The Representation Agreement with the Debtor in Possession

Polsinelli's retainer agreement with the debtor in possession indicates that Polsinelli was retained to represent the debtor in the adversary proceeding only. That agreement, captioned as "Engagement Letter for Legal Services for Representation in Adversary Proceeding," and which Polsinelli did not enter into until November 9, 2010, described Polsinelli's retention as being for "representation in an adversary proceeding involving Dr. Gloria Herndon, GB Herndon & Associates Inc. and Twelfth Street Partners, L.L.C. Resolution of a foreclosure of commercial and residential property near Gallaudet University in Washington, DC." Dkt. No. 76-2 (Ex. 1). That the special counsel role related to the adversary proceeding was emphasized by the letter's statement that:

> We look forward to representing the Companies and you in
> the Adversary Proceeding. When you advise us otherwise,
> we will give you a new file or files and issue a new
> engagement letter for assignments which are different

from this assignment.

Moreover, the engagement letter provided: "No change or waiver of any of the provisions of the Engagement Letter of these Terms of Representation shall be binding on either you or the law firm unless the change is in writing and signed by both."  No other engagement letter has been put in evidence.  As Dr. Herndon indicated at a hearing of December 29, 2010, Polsinelli, who had handled the litigation of the claims in the Superior Court, was going to handle the litigation of those claims in this court.

## B. Polsinelli's Application for Employment

Polsinelli's application for employment itself sought authorization to represent the debtor with respect to the adversary proceeding and also the bank's pending motion for relief from the automatic stay to pursue foreclosure.  That made sense, and was consistent with the representation agreement, to the extent that the lift stay motion would turn on whether the bank's debt (as contended in the adversary proceeding) was offset by the debtor's counterclaims against the bank in the adversary proceeding.

Polsinelli argues that the "[t]he retention of Polsinelli was broad in scope in that the representation included support efforts for the bankruptcy matter as well as the adversary proceeding."  Dkt. No. 194 at 1.  But the order and the application made clear that Polsinelli was only being employed as

16

special counsel, and was being employed as such under § 327(e),
which required that whatever tasks it undertook not be
representation of the debtor in the conduct of the case.
Although the application sought authorization to represent the
debtor in "such additional matters in the Debtor's case, or
otherwise, as the Debtor and Polsinelli Shughart may agree," any
such additional matters necessarily had to be limited to work
that Polsinelli could perform as special counsel, not
representation of the debtor "in the conduct of the case," work
that special counsel is barred by § 327(e) from performing.
The court would not have authorized both Gins's firm and a second
firm to act as bankruptcy counsel.  Polsinelli was never
authorized to represent the debtor in the general conduct of the
case.

Moreover, the amended application to employ stated that
"Polsinelli Shughart has assured the Debtor that it will take
care not to duplicate the efforts of debtor's primary counsel,
The Law Office of Richard H. Gins, LLC . . . ."  Dkt. No. 76 at
4.  Too often Polsinelli attended hearings that Gins was
handling, thereby duplicating his efforts.  Even if a task might
have fallen within the scope of Polsinelli's role as special
counsel, if Gins was already handling that task, Polsinelli ought
not have duplicated that effort.

17

## C. Polsinelli's Prepetition Claim

Even if the order authorizing employment had authorized Polsinelli to represent the debtor in the general conduct of the case, the order ought not be treated, for compensation purposes, as authorizing employment *nunc pro tunc* to represent the debtor in the general conduct of the case. Polsinelli had no right to act as such in light of its status as a creditor of the estate and did not disclose that it had occupied that status until late in the case.

Polsinelli received $14,959.49 *postpetition* (on October 10, 2010) in payment of an invoice for prepetition services (a payment it should have refused). Polsinelli did not refund that payment to the estate until January 5, 2011, when it filed its application for employment. Several time entries reflect that Polsinelli devoted attention to the issue of filing a proof of claim, thereby indicating that Polsinelli considered itself as having a prepetition claim. A time entry of February 6, 2011, reveals that even at that late stage of the case, Polsinelli still viewed itself as holding a prepetition claim. Polsinelli's amended application to authorize employment, filed on February 14, 2011, reflected that as of that date the $65,979.89 in outstanding fees the debtor owed had not yet been paid, because the application states only that Dr. Herndon "has made payment arrangements and is in the process of paying these fees."

18

Therefore, even as of February 14, 2011, Polsinelli remained a creditor of the debtor.

An attorney with a prepetition claim against the estate may not serve in any role other than as special counsel under § 327(e) and may not undertake representing the debtor in the general conduct of the case. *In re Jaimalito's Cantina Assocs. Ltd. P'ship.*, 114 B.R. 1 (Bankr. D.D.C. 1990).  Even if Polsinelli, in making arrangements for Dr. Herndon to pay the claim, could be viewed as having waived its prepetition claim, the waiver came late in the case, and, more importantly, the court only authorized the employment of Polsinelli as special counsel.  Because of its status as a creditor, if Polsinelli had sought to be employed as general counsel prior to entry of an order authorizing employment or prior to any waiver of its claim, it would have had no right to compensation for such work.

**D. Polsinelli's Representation of the Two Guarantors**

In addition, Polsinelli was not representing just the debtor in possession, but two guarantors as well, whose defenses and interests as guarantors were sometimes distinct from the debtor's, as in the case of their potentially having a right to jury trial (if it had not been waived) whereas the debtor had no right to a jury trial with respect to adjudication of the claim against it.

All of this, and the delay in filing an application

19

disclosing its connections to creditors, weigh in favor of limiting compensation to only those tasks that demonstrably were special counsel tasks, and not tasks relating to the general conduct of the case.

VI

FEES RELATING TO CONFLICTS CHECKS, NEGOTIATING A
REPRESENTATION AGREEMENT AND FEE PAYMENT ARRANGEMENTS,
AND SEEKING AUTHORIZATION TO BE EMPLOYED AS SPECIAL COUNSEL

Polsinelli seeks compensation for tasks directed to obtaining authorization to be employed as special counsel, performing conflicts checks, entering into a representation agreement, and making fee payment arrangements.  By the court's tally, $12,197.00 was billed for such tasks.  The time billed included:

- conferring with the client regarding fees;

- negotiating a representation agreement;

- conducting conflicts checks; and

- addressing refunding a postpetition payment of an invoice for prepetition services.

Those are tasks for which the work ought not be billed to the estate.  *See In re ACT Mfg., Inc.*, 281 B.R. at 484 ("Thus time spent attending pre-engagement meetings . . . should not be included in the application.  In addition time spent to perform conflicts checks and/or to obtain necessary waivers cannot be billed to the estate."); *In re Holthoff*, 55 B.R. 36, 42 (Bankr.

20

E.D. Ark. 1985) ("Time charged for letters, conferences,
agreements and phone calls regarding retainers and fee
applications is not compensable."). Based on the court's
experience in reviewing fee requests for work on applications to
employ professionals in other cases, the court concludes that
only $1,200.00 ought to be allowed for preparing and filing the
application to employ Polsinelli as special counsel. Once the
non-compensable tasks relating to employment were completed, it
ought not have taken more than $1,200.00 of attorney time (if
that much time) to prepare an application to employ Polsinelli in
compliance with the straightforward requirements of Fed. R.
Bankr. 2014(a).

The following time entries are identified as including time
devoted to the issues of conflict checks, applying to be employed
as counsel, and making arrangements regarding fees, or are
inferred (based on adjoining or close by time entries) to be
devoted to those issues:

| Date | Description | Tmkpr | Hrs. | Amount |
|------|-------------|-------|------|--------|
| 11/08/10 | Call with L. DeSantis re status of case. | JLSWI | 0.30 | 127.50 |
| 11/08/10 | Preparation of docketing for court dates. Correspondence re same. Correspondence to Mr. Gins re meeting.  Conference with Mr. Switzer re special counsel. Correspondence re same.  Meeting with Mr. Blakely. | LPDES | 1.10 | 275.00 |

| 11/09/10 | Exchanged e-mails with L. DeSantis re preparation of section 327(e) retention application; met with J. Soh re status of proceedings and preparation of application.. | JLSWI | 0.30 | 127.50 |
|---|---|---|---|---|
| 11/09/10 | Preparation of agreement. | LPDES | 2.70 | 675.00 |
| 11/09/10 | Confer with Mr. Switzer regarding status and drafting of retention application. Exchanged correspondence with Ms. DeSantis-Then. | JESOH | 0.25 | 67.50 |
| 11/10/10 | Reviewed bankruptcy case docket to determine status of case for purposes of advising B. Blakely and L. DeSantis re next steps and strategy; exchanged emails with L. DeSantis re client meeting.  Met with J. Soh regarding status.[10] | JLSWI | 0.60 | 255.00 |
| 11/10/10 | Correspondence re application for special counsel. Update task list. | LPDES | 2.30 | 575.00 |

---

[10]  This time entry includes meeting with J. Soh "regarding status."  Soh was working on the employment application.  The balance of the time entry is disallowed based on lumping and vagueness.  Moreover, JLSWI (Switzer) appears to be a bankruptcy attorney in another office of Polsinelli who was not involved in the actual litigation of the adversary proceeding or of the motion for relief from the automatic stay.  His advising "re next steps and strategy" likely was advising regarding the debtor's next steps in conducting the case, falling afoul of § 327(e)'s prohibition of special counsel "representing the [debtor in possession] in conducting the case."  Even if the advice related to the remaining steps regarding removal of the civil action, elsewhere I am capping the allowable compensation for work on removal.

| 11/11/10 | Confer with Mr. Switzer regarding drafting of motion to employ and exchanged correspondence with Ms. DeSantis-Then regarding terms of engagement. Review docketing calendar proof of claim deadline.[11] Began drafting employment application, proposed order and Blakely affidavit. | JESOH | 1.40 | 378.00 |
|---|---|---|---|---|
| 11/12/10 | Complete drafting and circulate employment application, order and affidavit to Mr. Switzer. | JESOH | 1.40 | 378.00 |
| 11/15/10 | Reviewed and revised section 327(e) retention application and related papers prepared by J. Soh; reviewed L. DeSantis e-mail re additional issues; met with J. Soh to discuss my comments. | JLSWI | 0.50 | 212.50 |
| 11/15/10 | Reviewed and revised application for special counsel. Correspondence re same. | LPDES | 0.80 | 200.00 |
| 11/15/10 | Confer Mr. Switzer regarding edits to application to employ and incorporate same. Circulate to Ms. DeSantis-Then. | JESOH | 0.80 | 216.00 |

---

[11] The time spent on monitoring the deadline for filing a proof of claim for Polsinelli's prepetition claim, like time spent by any other creditor on filing a claim, is not compensable.

| 12/17/10 | Conference with Mr. Gins. Conference with Mr. Blakely re same. Reviewed and revised application for special counsel. Review of motions.[12] | LPDES | 2.50 | |
|----------|----------------------------------------------------------------------------------------------------------------------------------------------|-------|------|--------|
|          |                                                                                                                                              |       |      | 625.00 |
| 12/28/10 | Review and revise opposition. Conference with Mr. Heschmeyer re same. Reviewed and revised special application. Correspondence re same. Review of motion and opposition. Conference with Mr. Gins re same. Conference with Dr. Herndon re hearing.[13] | LPDES | 5.60 | 1,400.00 |

---

[12]   The pending motions on December 17, 2010, were the
bank's long-standing motion for relief from the automatic stay to
allow foreclosure to resume, and, recently filed in the adversary
proceeding, a motion for partial summary judgment and a motion to
strike jury demand.  I infer that the two motions recently filed
in the adversary proceeding were the "motions" mentioned in this
time entry, and I will infer that the matters addressed in the
two conferences were those two motions as well.  But this is an
instance of impermissible lumping, and I can only estimate (based
on the complexity of the two motions) the time spent on the
"motions."  I will treat half of the time (1.25 hours or $312.50)
as related to the employment application.

[13]   The "motion" appears to be the bank's emergency motion
for appointment of a trustee filed on December 23, 2010.  The
"opposition" appears to be the opposition the debtor filed to
that motion on December 28, 2010, and the "hearing" appears to be
the hearing on that motion set for December 29, 2010.  This is
another instance of lumping.  Because the hearing was the next
day and Ms. DeSantis-Then was going to participate in that
hearing, I will treat only two hours (or $500) as devoted to the
employment application.  The time spent regarding the emergency
motion for appointment of a trustee is disallowed elsewhere.

| 12/29/10 | Preparation for hearing. Reviewed and revised motion to strike. Conference with Mr. Gins and client before hearing. Attendance to hearing. Conference re same. Conference with Mr. Gins re special application.[14] | LPDES | 6.30 | 1,575.00 |
|---|---|---|---|---|
| 12/30/10 | Conference with Mr. Heschmeyer re notice.  Correspondence with Mr. Gins re application.  Conference with Mr. Gins re application. Conference with Dr. Herndon re fees.  Conference with Mr. Heschmeyer re summary judgment response.  Reviewed and revised notice of removal.[15] | LPDES | 1.40 | 350.00 |
| 12/30/10 | Review the Bankruptcy papers and petition for admission. | WDBLA | 2.00 | 980.00 |
| 01/03/11 | Conference with Dr. Herndon re application. | LPDES | 0.10 | 25.00 |
| 01/04/11 | Calls with L. DeSantis re status, strategy and retention application issue; reviewed draft application and related materials, and commented on same. | JLSWI | 0.50 | 212.50 |
| 01/04/11 | Conference with Mr. Switzer re special counsel. Reviewed and revised special application. | LPDES | 0.90 | 225.00 |

---

[14]   I will treat only 0.30 hours (or $75.00) as relating to the special counsel application.  Gins was bankruptcy counsel and was not handling the application to employ special counsel, and, given the significant time Polsinelli had already devoted to the application, it may be inferred that any conference with him regarding the application would have taken no more than 18 minutes.

[15]   I will treat 0.90 hours (or $225.00) as relating to the special counsel application and fees.  Regardless, the entire entry will be disallowed because I am also going to cap the compensation for working on the removal task, and because I treat the conference with Mr. Heschmeyer re summary judgment as negligible as he reported no time that day.

| 01/05/11 | Reviewed and revised application for special counsel. Conference with Mr. Gins re hearing.[16] | LPDES | 0.60 | 150.00 |
|----------|-----------------------------------------------------------------------------------------|-------|------|--------|
| 01/25/11 | All [sic] with L. DeSantis re issues raised by judge in connection with approval of retention application and need to file supplement, the application issues and procedures and status and open issues in bankruptcy case; review court's order; met with J. Soh re status and tasks to be completed to assist Lauren with open issues. | JLSWI | 0.40 | 170.00 |
| 01/25/11 | Review of order and special application. Correspondence re same. Conference with Mr. Switzer re special application.  Conference with Mr. Gins re hearing.[17] | LPDES | 1.00 | 250.00 |
| 01/25/11 | Confer with Mr. Switzer regarding provisional employment order and preparation of fee application. | JESOH | 0.20 | 54.00 |
| 01/26/11 | Review bankruptcy court order directing amended employment application and calendar management. | JESOH | 0.10 | 27.00 |
| 01/30/11 | Review order requiring supplement employment application and draft. Correspondence to Ms. DeSantis-Then offering assistance for same. | JESOH | 0.15 | 40.50 |

[16]   The "hearing" was presumably the scheduling conference in the adversary proceeding set for January 10, 2011.  (The parties agreed to continue the oft-continued hearing on the motion for relief from the automatic stay that was set for January 10, 2011, to February 23, 2011, and that continuance was announced on the record on January 10, 2011.)  Polsinelli was handling the adversary proceeding, so I treat the time conferring with bankruptcy counsel, Gins, as insignificant.

[17]   The only imminent "hearing" was the January 28, 2011, hearing on the motions in the adversary proceeding.  Polsinelli, not Gins, was handling the adversary proceeding, and that was a conference for which Gins's time entries reflect no time.  Accordingly, I treat the time conferring with bankruptcy counsel, Gins, as insignificant.

26

| 02/06/11 | Review calendar for pending deadlines and inquire after status of filing proof of claim and amended employment application and verification to Mr. Switzer.[18] | JESOH | 0.10 | 27.00 |
|----------|------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|------|--------|
| 02/07/11 | Exchanged emails with L. DeSantis re amended retention application related issue; met with J. Soh re status and amended application. | JLSWI | 0.30 | 127.50 |
| 02/07/11 | Confer with Mr. Switzer regarding conflicts report and declaration in support of the amended employment application as special counsel. Review correspondence and leave voicemail for Ms. DeSantis-Then regarding supplement to employment application as special counsel. | JESOH | 0.20 | 54.00 |
| 02/10/11 | Correspondence re special application. | LPDES | 0.70 | 175.00 |
| 02/11/11 | Worked on amended retention application issues. | JLSWI | 0.30 | 127.50 |
| 02/11/11 | Correspondence re special application. Review of conflicts. | LPDES | 0.60 | 150.00 |
| 02/11/11 | Review docket and application to employ and declaration in support, and order directing amendment to application. Pull creditor list from bankruptcy docket and research US Trustee roster for conflicts purposes, and cross check same with conflicts report. Exchanged correspondence with Mr. Blakely regarding same. Draft amended application, proposed order and Blakely declaration in support. Exchanged correspondence with Ms. DeSantis-Then confirming amended conflicts check. | JESOH | 2.45 | 661.50 |

---

[18] The time spent on monitoring the deadline for filing a proof of claim for Polsinelli's prepetition claim, like time spent by any other creditor on filing a claim, is not compensable.

| 02/14/11 | Worked on several rounds of revisions to amended retention application and supplemental declaration of W. Blakely; reviewed conflicts check and analyzed and cleared all conflicts; revised Blakely declaration to address issue; met with J. Soh to address all open issues and finalize materials for filing. | JLSWI | 1.20 | 510.00 |
|---|---|---|---|---|
| 02/14/11 | Correspondence re conflicts. Reviewed and revised supplemental application. | LPDES | 1.10 | 275.00 |
| 02/14/11 | Several conferences with Mr. Switzer regarding amendments to amended application and to review and clear conflicts. Make amendments to amended application and Blakely declaration in support. | JESOH | 1.60 | 432.00 |
| 03/07/11 | Reviewed bankruptcy court's order; met with J. Soh re same; exchanged e-mails with B. Blakely re same and re status in case; follow-up re: same. | JLSWI | 1.90 | 807.50 |
| 03/07/11 | Review of document. Correspondence re same. | LPDES | 0.90 | 225.00 |
| 03/07/11 | Review order on amended employment application and confer with Mr. Switzer regarding same. Calendar management for deadline to file amended declaration. | JESOH | 0.20 | 54.00 |
| 03/08/11 | Completed drafting and revising supplemental declaration re retention application; completed review and analysis of connections to be disclosed and same; circulated revise stipulation to be. Blakely, et al. for review and comment. | JLSWI | 3.20 | 1,360.00 |
| 03/08/11 | Correspondence re application | LPDES | 0.10 | 25.00 |
| 03/09/11 | Exchanged e-mails with B. Blakely; follow-up re: same. | JLSWI | 0.20 | 85.00 |

| 03/14/11 | Correspondence. Review of Order re application to employ. Correspondence re hearing. Correspondence re broker. | LPDES | 0.50 | 125.00 |
| 03/15/11 | Review of document. Correspondence re same. | LPDES | 0.50 | 125.00 |
| 03/17/11 | Revised and finalized document sent same to B. Blakely for final review, approval and filing. | JLSWI | 0.10 | 42.50 |
| 03/21/11 | Review and revised motion to employ. | LPDES | 0.20 | 50.00 |
| 03/22/11 | Correspondence re filing.[19] | LPDES | 0.10 | 25.00 |

Including the adjustments set forth in the footnotes, the amount of billings relating to the employment issues comes to $12,197.00.  The court thus allows $1,200 and disallows **$10,997.00** of the $12,197.00 relating to the issue of obtaining authorization for employment as special counsel, conflicts checks, and fee arrangements.

## VII

### EXCESSIVE TIME SPENT FILING A NOTICE OF THE PENDENCY OF THE BANKRUPTCY CASE AND ON REMOVAL OF THE CIVIL ACTION

As of the filing of the bankruptcy case on September 24, 2010, prosecution of the bank's claims against the debtor in the civil action in the Superior Court was stayed by 11 U.S.C. § 362(a).  Polsinelli was representing the debtor and its co-defendants regarding the civil action and there were two obvious

---

[19]   The only recent filing was the filing of the previous day regarding the employment application.

tasks for Polsinelli to address on behalf of the debtor in
possession upon the filing of the bankruptcy case:

- the issue of filing notice in the Superior Court that
  the bankruptcy case had been filed giving rise to an
  automatic stay under 11 U.S.C. § 362(a) of the
  litigation of the bank's claims against the debtor; and
- the issue of whether to remove the civil action to the
  bankruptcy court, and implementing such removal.

The first task was completed by September 28, 2010, but the
second task dragged on until January 2011.

Insofar as the civil action is concerned, the time entries for
September 25, 2010, through September 28, 2010, are treated as devoted
to the tasks of addressing the issue of removal or the notice of the
pendency of the bankruptcy case because it was not until September 30,
2010, that the bank filed its motions to lift the 11 U.S.C. § 362(a)
automatic stay of foreclosure and of the civil action.  Time spent
during that period addressing the general conduct of the bankruptcy
case, as opposed to the civil action, is not compensable.  The issue
of a Chapter 11 plan was one for Gins, as bankruptcy counsel, to
handle; under 11 U.S.C. § 327(e), Polsinelli, as special counsel, was
not authorized to represent the debtor "in conducting the case."  The
task of considering the potential plan may have been work of benefit
to the two guarantors that Polsinelli was representing, but it is not
work compensable as special counsel for the debtor in possession.

The time entries for September 25, 2010 through September

30

28, 2010, set forth below, total $4,525.00 even though the only tasks regarding the civil action that are specifically identified in these time entries are those of giving notice of the case and removal of the civil action:

| Date | Description | Tmkpr | Hrs. | Amount |
|------|-------------|-------|------|--------|
| 9/25/10 | Review the G.B. Herndon filing papers.  Correspondence with Mr. Schweitzer regarding the filing and Plan for emerging from bankruptcy.[20] | WDBLA | 2.75 | 1,347.50 |
| 9/25/10 | Exchanged emails with B. Blakely re bankruptcy and litigation issues. | JLSWI | 0.20 | 85.00 |
| 9/27/10 | Discussions with Jerry Switzer regarding the filing of Ch. 11 and consequences of same.  Discussion of Adversary proceeding and proceeding on same.  Discussion of issues with Dr. Herndon. | WDBLA | 2.75 | 1,347.50 |
| 9/27/10 | Call with L. DeSantis re **removal of litigation to bankruptcy** court, filing of notice of bankruptcy and related issues; call with B. Blakely and L. DeSantis re bankruptcy and litigation issues and tasks to be completed; exchanged emails with B. Blakely re same; located form **notice of bankruptcy** to be filed in state court; met with J. Soh re status and bankruptcy issues. | JLSWI | 1.40 | 595.00 |
| 9/27/10 | Correspondence re bankruptcy proceeding.  Conference with Mr. Blakely re bankruptcy and removal. Conference with Mr. Switzer re stay. | LPDES | 1.20 | 300.00 |

---

[20]   Work regarding filing the debtor's required filings in the case, and work regarding "Plan for emerging from bankruptcy" were tasks for Gins as they related to conducting the bankruptcy case.  Section 327(e) barred Polsinelli from handling these tasks as special counsel.

| 9/28/10 | Preparation of notice of bankruptcy. Correspondence re same.  Conference with Mr. Blakely re same. | LPDES | 3.40 | 850.00 |
|---------|----------|-------|------|--------|

[Emphasis added].

The above table shows that on September 28, 2010, Polsinelli billed $850 for preparing a notice of the pendency of the bankruptcy case for filing in the Superior Court.  The time entries reflect work prior to September 28, 2010 on that same issue, lumped with entries listing work regarding removal of the civil action.  Billing $850 (and more when the lumped time entries are included) was an excessive charge for the simple task of preparing a notice for filing in the Superior Court civil action.  An experienced bankruptcy counsel could accomplish that task in one hour, and only $500 will be allowed; the balance of **$350** on September 28, 2010, and the amounts charged for such time included in the lumped time entries are disallowed.

Although Polsinelli immediately began considering the issue of removal, there was a three-week lull after September 27, 2010 (specifically, until October 20, 2010), before its time entries identify it as starting anew to work on the removal issue.[21]  In addition to the time entries through September 28, 2010, the following time entries (emphasis added) from October 20, 2010, through January 3, 2011 are identified as devoted to the issue of removal, or are inferred (based on adjoining or close by time entries) to be devoted to that issue:

---

[21]  Some of the time entries during that lull are so vague that it is possible that removal was one of the tasks worked on.

| Date | Description | Tmkpr | Hrs. | Amount |
|------|-------------|-------|------|--------|
| 10/20/10 | Conference with Mr. Gins re **removal**. Conference with Dr. Herndon re same.  Correspondence to Mr. Blakely re update. | LPDES | 0.40 | 100.00 |
| 10/21/10 | Review of notice of **removal**. Correspondence with Mr. Gins re same. Review of the application. Conference with Mr. Gins re **removal**. | LPDES | 1.30 | 325.00 |
| 10/22/10 | Conference with Ms. DeSantis on **removal**. | WDBLA | 0.30 | 147.00 |
| 10/22/10 | Conference with Dr. Herndon re case. Conference with Mr. Blakely re same. | LPDES | 0.30 | 75.00 |
| 10/25/10 | Conference with Mr. Gins re **removal**. Conference with Mr. Blakley re same. Conference with Dr. Herndon re **removal.** | LPDES | 0.80 | 200.00 |
| 10/26/10 | Conference with Ms. DeSantis and meeting with Dr. Herndon. | WDBLA | 1.30 | 637.00 |
| 10/26/10 | Conference with Mr. Blakely re **removal**. Conference with Dr. Herndon re same. | LPDES | 1.30 | 325.00 |
| 10/27/10 | Review the Bankruptcy file and the pending issues concerning **removal**. Meeting with Ms. DeSantis and discussion of same.  Meeting with Mr. Gins. | WDBLA | 2.75 | 1347.50 |
| 10/28/10 | Conference with Ms. DeSantis. | WDBLA | 1.00 | 490.00 |
| 10/28/10 | Correspondence re **removal**. Conference with Mr. Blakley re case. | LPDES | 1.00 | 250.00 |
| 10/29/10 | Meeting with Ms. DeSantis to discuss **removal**, all **deadlines** and the action to be taken on all. Conference call with Dr. Herndon to discuss **removal**. | WDBLA | 2.00 | 980.00 |
| 10/29/10 | Conference with Mr. Blakely re case. Conference with client. Review of file. | LPDES | 1.30 | 325.00 |

| 11/01/10 | Conference with Ms. DeSantis. | WDBLA | 1.00 | 490.00 |
|----------|-------------------------------|-------|------|--------|
| 11/01/10 | Communication to Mr. Gins re **removal**. Preparation of pleadings for the **removal** to bankruptcy. Conference with Mr. Blakely re same.  Conference with Mr. Gins re pleadings. Review of rules. | LPDES | 1.40 | 350.00 |
| 11/02/10[22] | Conference with Ms. DeSantis. | WDBLA | 1.50 | 735.00 |
| 11/02/10 | Conference with Mr. Gins re **filing**. Conference with Mr. Blakley re same. Preparation of special counsel forms.[23] Preparation of pleadings.  Conference with Mr. Gins re deposition.[24] | LPDES | 3.30 | 825.00 |
| 11/03/10 | Preparation of memorandum to Mr. Blakely re **deadlines**.[25] | LPDES | 1.30 | 325.00 |

---

[22]  November 2, 2010, was the date of filing of the notice of removal in the bankruptcy case.

[23]  The court has capped elsewhere the amount of fees recoverable for working on the application to employ special counsel.  So any part of this time entry relating to that task would be disallowed.

[24]  Because of the lumping of "Conference with Mr. Gins re deposition" with other tasks, Polsinelli has not carried its burden of proving how much time should be allocated to that task.

[25]  Under Fed. R. Bankr. P. 9027(i), the Superior Court's scheduling order of August 20, 2010, remained in effect until modified by the bankruptcy court, but its deadlines were old news.  The "deadlines" referred to in the time entry appear related to the removal issue, specifically:

    (1) the obligation under Fed. R. Bankr. P. 9027(c) to "promptly" file in the Superior Court a copy of the notice of removal; and

    (2) a deadline of November 8, 2010--set by the clerk's November 3, 2010 Electronic Deficiency Notice--for the debtor to re-file the removed civil action as an adversary proceeding.

| 11/17/10 | Discussion with Ms. DeSantis of the options. Review the **Removal** documents and the associated pleadings in BR. Call to Mr. Cosgrove. | WDBLA | 2.25 | 1102.50 |
|---|---|---|---|---|
| 12/06/10 | Conference with Ms. DeSantis re **removal**. | WDBLA | 0.30 | 147.00 |
| 12/25/10 | Conference with Ms. DeSantis on **removal**. | WDBLA | 0.80 | 392.00 |
| 12/30/10[26] | Conference with Mr. Heschmeyer re **notice**. Correspondence with Mr. Gins re **application**. Conference with Mr. Gins re **application**.[27] Conference with Dr. Herndon re fees.  Conference with Mr. Heschmeyer re summary judgment response.[28]  Reviewed and revised **notice of removal**. | LPDES | 1.40 | 350.00 |
| 12/31/10 | Made edits previously discussed with Ms. DeSantis to the Opposition to the **Notice of Removal** for Superior Court. | JAHES | 0.60 | 27.00 |
| 01/03/11 | Meeting with Mr. Heschmeyer. | WDBLA | 0.20 | 98.00 |
| 01/03/11 | Made final edits to the notice of **removal** for D.C. Superior Court; discussions with Mr. Blakely and Ms. Dodson re: same. | JAHES | 0.20 | 9.00 |

---

[26]  The notice of removal referred to must be the notice of removal filed in the Superior Court on January 3, 2011.

[27]  The "application" is presumably the application to employ Polsinelli as special counsel.  As discussed elsewhere, the compensation sought with respect to that work was excessive, and has been capped.  Accordingly, this time entry of 12/30/10 is not allowable to the extent it dealt with that task.

[28]  Mr. Heschmeyer did not report any time on December 30, 2010, and LPDES's time on "Conference with Mr. Heschmeyer re summary judgment response" which was lumped with the other work is treated as insignificant.

| 01/11/11 | Preparation of **removal** documents for the court.  Review of answer and correspondence to Mr. Aronson re same.  Reviewed and revised praecipe [presumably the praecipe attaching the papers that had been filed in the Superior Court civil action]. | LPDES | 2.20 | 550.0 |
|---|---|---|---|---|

These time entries total $10,602.00.  The time entries from the
commencement of the case and through January 11, 2011, relating
to removal or the task of filing a notice of the bankruptcy case
total $15,127.00 ($4,525.00 through September 28, 2010, plus
$10,602.00 thereafter).  Of that, $850 was specifically
identified as relating to the notice filed on September 28, 2010.
For reasons set forth above, only $500 is allowed for the work on
that notice of the pendency of the bankruptcy case.  That leaves
as an issue how much of the remaining $14,277.00 (the amount
remaining after disposing of the $850 time entry of September 28,
2010) can be allowed as reasonable compensation for working on
the removal task.

Even if some of the $14,277.00 in billed time was devoted to
the issue of whether it was advisable to remove the civil action,
only minimal compensation can be allowed for addressing the issue
of advisability.  Competent bankruptcy counsel ought to arrive at
such a decision on behalf of the debtor without dithering and
needlessly running up time and fees making such a decision.

Moreover, to the extent the issue was whether the debtor's co-defendants would benefit from removing the civil action *as to them*, that is work for their benefit, not the debtor's.

In addition, the actual process of removing a civil action, governed by Fed. R. Bankr. P. 9027, is straightforward, something that an experienced bankruptcy attorney (or civil litigator) ought to be able to accomplish readily by reading the applicable statute and rules.

Moreover, Gins, the debtor's bankruptcy counsel, also worked on the removal issue.  On October 18 and 19, 2010, prior to Polsinelli's resuming working on removal after the three-week lull, Gins spent 2.00 hours on the task (research: 1.00 hour, and drafting motion and research: 1.00 hour) for a charge of $700. On October 21, 2010, he spent 0.50 hours on "Telephone conversation with Aronson [the bank's counsel] re removal and continuing Lift Stay; and telephone call to DeSantos [sic] re: same;" on October 27, 2010, he spent 0.30 hours on "Telephone conference with Blakely and Herndon re removal;" on October 28, 2010, he spent 3.00 hours on "Read and review file and prepare for 2004, work on removal and research re same;" on November 2, 2010, the docket entries reflect, he filed the notice of removal in the main case; and on November 23, 2010, he filed the notice of removal as an adversary proceeding .  *See* Dkt. No. 188, Ex. A.

As to the $14,277.00 at issue, I will allow **$2,550.00** in

37

requested fees of Polsinelli as reasonable compensation for working on the issue of removal.[29]  I have allowed $500.00 as reasonable compensation for working on filing a notice in the Superior Court regarding the pendency of the bankruptcy case, and disallowed any other amounts spent on that task.  The compensation allowed with respect to the $15,127.00 billed for the two tasks (work on the notice of pendency of the bankruptcy case and on the removal of the civil action) is **$3,050.00** ($2,550.00 for working on the removal issue and $500.00 for working on filing in the Superior Court a notice of the bankruptcy case).[30]  The balance of **$12,077.00** is disallowed.

## VIII

### THE EMERGENCY MOTION FOR APPOINTMENT OF A TRUSTEE

On December 23, 2010, the bank filed its *Emergency Motion for Appointment of Chapter 11 Trustee*.  This *Emergency Motion*, set for hearing on December 29, 2010, principally related to the

---

[29]  This includes allowance of the $550.00 for 2.20 hours billed by LPDES for January 11, 2011, for:

Preparation of removal documents for the court.  Review of answer and correspondence to Mr. Aronson re same.  Reviewed and revised praecipe [presumably the praecipe attaching the papers that had been filed in the Superior Court civil action].

The remainder of the work relating to removal is limited to $2,000.00.

[30]  The $15,127.00 consists of $4,525.00 for work through September 28, 2010, and $10,602.00 for work after September 28, 2010.

debtor's failure to pay storage costs to Deluxe Building Systems, Inc., regarding certain modular units that were needed to complete the construction of the Twelfth Street property.  The bank viewed the failure to pay the storage costs to be gross mismanagement justifying the appointment of a trustee.[31]

The bank also showed that the debtor was paying Ms. Herndon's personal expenses; pointed to expenses of Twelfth Street Partners, L.L.C., being paid by the debtor; and raised a trip Ms. Herndon made to Senegal during the midst of the debtor's facing the threatened imminent loss by its affiliate of the modular units.  Those issues had no connection to the issues that Polsinelli had been dealing with before the filing of the bankruptcy case.

Finally, the bank showed that on October 10, 2010, the debtor paid $14,959.49 to Polsinelli for an invoice for pre-petition legal services.  Polsinelli's invoices show that it did not refund that payment until January 5, 2011.  Polsinelli ought not have accepted that payment, and any time spent by Polsinelli in addressing that aspect of the *Emergency Motion* would not be compensable even if Polsinelli were otherwise entitled to be compensated for working on the *Emergency Motion*.

---

[31]  Those units were property of Twelfth Street Partners, L.L.C., the debtor's sister corporation, and they were being stored at Deluxe's property in Pennsylvania.  Deluxe was threatening to auction the modular units if storage costs were not paid by December 31, 2009.

The debtor's bankruptcy counsel, Gins, bore responsibility for dealing with the debtor in possession's being allowed to continue as a debtor in possession, and not being displaced as such by the appointment of a trustee, as that is an integral part of conducting the bankruptcy case.  That is not the type of work that a special counsel is authorized to conduct under § 327(e) (permitting employment of special counsel to conduct work "other than to represent the trustee [*i.e.*, the debtor in possession] in conducting the case").  The debtor's bankruptcy counsel, Gins, spent 15.9 hours addressing this *Emergency Motion* and handling the hearing on it.  He has been allowed $5,565.00 for that work.

The *Emergency Motion* was not work relating to the adversary proceeding or the motion for relief from the automatic stay, the two matters for which Polsinelli was specifically employed.  The *Emergency Motion* was not a matter upon which Polsinelli had been representing the debtor before the commencement of the case. Gins was handling the *Emergency Motion*, and devoting substantial time to it, and solely conducted the debtor's presentation of the debtor's opposition to the *Emergency Motion* at the hearing of December 29, 2010.  Polsinelli may have felt obligated to participate on behalf of the other two parties it was representing, and may seek payment of fees from them, but there was no need for it to work on behalf of the debtor regarding the *Emergency Motion*.

40

Even if the two Polsinelli attorneys who worked on the *Emergency Motion* had been in Gins's firm instead, working as bankruptcy counsel instead of as special counsel, the time would not be compensable.  At the hearing on the motion, only Gins addressed the court and examined witnesses.  The motion did not require the work of three attorneys (or even two attorneys), and the two Polsinelli attorneys ought not have triple teamed this motion with Gins.

Polsinelli's time entries relating to the *Emergency Motion* filed on December 23, 2010, for appointment of a trustee include:

| 12/27/10 | Conference with ms. [sic] DeSantis. | WDBLA | 0.40 | 196.00 |
|---|---|---|---|---|
| 12/27/10 | Correspondence re filing. Conference with Mr. Blakely re filing.  Conference with Mr. Gins. Correspondence re opposition. | LPDES | 0.40 | 100.00 |
| 12/28/10 | Preparation of the documentation related to the Hearing on Jury trial and Hearing regarding appointment of a trustee.[32] | WDBLA | 2.75 | 1,347.50 |

---

[32]  Because of lumping, failing to distinguish between time spent on the jury issue in the adversary proceeding versus the *Emergency Motion* in the main case, it is impossible accurately to allocate the time between the two tasks.  But it does not matter because the entire entry is to be disallowed regardless of how much time was spent on each task.  (The court disallows the time spent on the jury issue for reasons discussed later.)  If time spent on one of the two tasks *were* allowable, the time entry would have to be disallowed in any event because of the impermissible lumping. For ease of discussion, I will treat the entire time entry as related to the *Emergency Motion*.

| 12/28/10 | Review and revise opposition. Conference with Mr. Heschmeyer re same. Reviewed and revised special application.[33] Correspondence re same. Review of motion and opposition. Conference with Mr. Gins re same. Conference with Dr. Herndon re hearing. | LPDES | 5.60 | 1,400.00 |
| 12/29/10 | Preparation for hearing.  Meeting with Mr. Heschmeyer. | WDBLA | 3.00 | 1,470.00 |
| 12/29/10 | Preparation for hearing. Reviewed and revised motion to strike. Conference with Mr. Gins and client before hearing. Attendance to hearing. Conference re same. Conference with Mr. Gins re special application.[34] | LPDES | 6.30 | 1,575.00 |

These time entries, with adjustments noted in the footnotes, show

**$5,388.50** for work on the *Emergency Motion*.  That $5,388.50 is

---

[33] Because of lumping, Polsinelli has failed to show what amount of time was actually devoted to each task in this time entry.  It does not matter, for I have capped the compensation for working on the employment application, and I am disallowing time spent on the *Emergency Motion*.  I have treated $500 of this entry as relating to the employment application, and will treat the remaining $900 as relating to the *Emergency Motion*.

[34] The 10:30 a.m. hearing of December 29, 2010, on the *Emergency Motion* concluded at 12:42 p.m.  If preparation began at 7:30 a.m., that would mean that DeSantis-Then devoted 5.5 hours that day to the *Emergency Motion* (the same amount of time as Gins spent on the motion that day).  That would mean that 0.8 hours was devoted to the two other tasks (the employment application and the motion to strike).  I have capped the compensation for working on the employment application, and am disallowing compensation for working on the motion to strike the jury demand. Because I am also disallowing time for working on the *Emergency Motion* as well, it does not matter how much time was spent on each task.  I have treated 0.3 hours ($75.00) of this entry as relating to the employment application; I will treat 5.5 hours (or $1,375.00) as related to the *Emergency Motion*; and I will treat the remaining 0.5 hours (or $125.00) as devoted to the motion to strike.

disallowed.

IX

THE GRANTING IN THE ADVERSARY PROCEEDING OF
THE MOTION TO STRIKE THE DEMAND FOR A JURY TRIAL

Polsinelli represented three parties in the adversary
proceeding, and is only entitled to be compensated for services
that were undertaken to benefit the estate.  It is not entitled
to compensation for services that were undertaken for the benefit
of the debtor's co-defendants in the adversary proceeding but
that were not going to benefit the estate.

On December 15, 2010, the bank filed in the adversary
proceeding a motion to strike the defendants' jury demand and a
motion for partial summary judgment.  As to the debtor, the issue
of a jury was a non-issue.  Once the debtor commenced its
bankruptcy case, the adjudication of the claims against the
debtor (including adjudication of the counterclaims raised as
defenses to the claims) became a non-jury matter.  Accordingly,
the jury demand issue was only of relevance to the guarantors.
Moreover, there was no chance of even the guarantors succeeding
on the issue.  The waiver of the right to a jury trial had been
conspicuously highlighted in the forbearance agreement of
December 22, 2009; Dr. Herndon (acting on her own behalf and on
behalf of her two companies) was a sophisticated business person;
and she expressly relied upon the advice of a sophisticated law
firm in executing the agreement.  Polsinelli should not be

43

compensated for working on that issue as the work can not be viewed as promising to confer a benefit on the estate.

These are the time entries that appear related to opposing the motion to strike the jury demand:

| Date | Description | Tmkpr | Hrs. | Amount |
|------|-------------|-------|------|--------|
| 10/05/10 | Conference with Mr. Switzer re motion to strike.[35] | LPDES | 0.30 | 75.00 |
| 12/06/10 | Conference with Mr. Gins re jury trials.  Conference with Mr. Blakely re case.[36] | LPDES | 0.30 | 75.00 |
| 12/17/10 | Conference with Ms. DeSantis on motions pending.[37] | WDBLA | 1.75 | 857.50 |
| 12/17/10 | Conference with Mr. Gins. Conference with Mr. Blakely RE same. Reviewed and revised application for special counsel. Review of motions.[38] | LPDES | 2.50 | 625.00 |

---

[35]  Even though the motion to strike the jury demand was not filed until December 15, 2010, it can be inferred that the bank's counsel had alerted Polsinelli that it would be forthcoming.

[36]  The conference with Mr. Blakely appears to have related to the removal issue (as he billed 0.30 hours for conferring on that issue on 12/06/10).  Nevertheless, I am treating the entire time as related to the jury issue because of lumping, and because it does not matter in light of my having capped the compensable time for working on the removal issue.

[37]  At this initial stage of conferring regarding the two motions, I will treat one-half of this (**$428.75**) as related to the motion to strike the jury demand and the other half as related to the motion for partial summary judgment.

[38]  I have already treated 1.25 hours of this time as related to the employment application.  I will treat the remaining time as evenly divided between the motion for partial summary judgment and the motion to strike the jury demand, so that 0.625 hours or **$156.25** is treated as related to the jury issue.

| | | | | |
|---|---|---|---|---|
| 12/20/10 | Review of Motion. Preparation of task list. Review of motion for partial summary judgment. Conference with Mr. Gins RE filings. Research RE rules and timing. Conference with Mr. Heschmeyer RE same.[39] | LPDES | 3.10 | 775.00 |
| 12/20/10 | Phone conversation with Ms. DeSantis RE: responding to motion to strike. | JAHES | 0.40 | 18.00 |
| 12/24/10 | Correspondence regarding upcoming schedule for filing in the case. | JAHES | 0.15 | 6.75 |
| 12/26/10 | Began drafting outline of a response to Plaintiff's motion to strike jury demand. | JAHES | 0.70 | 31.50 |
| 12/27/10 | Completed first draft of our response to Plaintiff's motion to strike jury demand. | JAHES | 4.10 | 184.50 |
| 12/28/10 | Preparation of the documentation related to the Hearing on Jury trial and Hearing regarding appointment of a Trustee.[40] | WDBLA | 2.75 | 1,347.50 |
| 12/28/10 | Telephone conference with Mr. Heschmeyer RE jury demand. | WDBLA | 2.55 | 1,249.50 |

---

[39] I will treat 1.10 hours of this (**$275.00**) as related to the motion to strike the jury demand. I view the motion for partial summary judgment as more procedurally and substantively complicated.

[40] I have already treated this time as relating to the *Emergency Motion* to appoint a trustee; accordingly **$0** is treated as related to the motion to strike.

| | | | | |
|---|---|---|---|---|
| 12/29/10 | Preparation for hearing. Reviewed and revised motion to strike.[41] Conference with Mr. Gins and client before hearing. Attendance to hearing. Conference RE same. Conference with Mr. Gins RE special application. | LPDES | 6.30 | 1,575.00 |
| 12/29/10 | Conversation with Mr. Blakely regarding possible reorganization of our response to Plaintiff's motion to strike jury demand. | JAHES | 0.10 | 4.50 |
| 01/02/11 | Review the outstanding motions related to Summary Jmt and strike Jury.[42] | WDBLA | 2.00 | 980.00 |
| 01/13/11 | Discussion and review of the issue of the waiver of Jury. | WDBLA | 0.75 | 367.50 |
| 01/13/11 | Review of motion replies. Review of motion for sanctions. Research RE same. Correspondence RE same. | LPDES | 2.10 | 525.00 |
| 01/13/11 | Correspondence with Ms. DeSantis RE: jury demand, and opposing counsel's threatened sanctions motion. Follow-up case law research RE: the same. | JAHES | 1.85 | 83.25 |
| 01/14/11 | Review the Right to Jury Trial Issue and related correspondence. | WDBLA | 0.50 | 245.00 |
| 01/15/11 | Correspondence to trial team regarding the Jury Demand issue and need for research on same. Review the Aronson pleading and demand to drop the Jury | WDBLA | 2.00 | 980.00 |
| 01/15/11 | Multiple correspondence RE waiver of jury trial. | LPDES | 0.40 | 100.00 |

---

[41]   Because of lumping elsewhere, I have assumed that 0.5 hours of this time (or **$125.00**)was devoted to the motion to strike, but it does not matter as work on the other tasks has been capped or, as in the case of work on the jury issue, disallowed.

[42]   I will treat 1.00 hours of this time, or **$490.00**, as related to the motion to strike.

| 01/16/11 | Exchanges with Ms. DeSantis regarding the Right to a Jury Trial. Review the authorities on same | WDBLA | 1.50 | 735.00 |
|---|---|---|---|---|
| 01/16/11 | Correspondence re jury demand. Multiple correspondence re answer and chronology. Meeting with Mr. Blakely. | LPDES | 0.70 | 175.00 |
| 01/21/11 | Organized motions and cited cases for the upcoming motions to strike jury demand and for summary judgment. Correspondence with Mr. Hammond: RE the same.[43] | JAHES | 0.35 | 15.75 |

Taking account adjustments set forth in the footnotes, $6,338.37 is treated as related to the jury trial issue.  That **$6,338.37** is disallowed.

X

ORDER GRANTING PARTIAL SUMMARY JUDGMENT ON THE
BANK'S MONETARY CLAIM AND DISMISSING THE DEBTOR'S COUNTERCLAIMS

The bank's complaint was a straightforward request for entry of a judgment for the unpaid principal and interest that were owed as of December 7, 2009, plus late charges, collection expenses (including attorney's fees), and interest accruing after December 7, 2009.  A judgment for more than $8,000,000 was sought.

## A. The Further Amended Answer and Counterclaim

It was clear from the outset of this bankruptcy case that the forbearance agreement would be an obstacle to the debtor's

---

[43]  I will treat half of this time, or **$7.87**, as related to the motion to strike.

attempting to assert any claims against the bank that arose before the execution of the forbearance agreement.  This is because, as the bank argued in opposing a motion for a temporary restraining order filed in the Superior Court, "Defendants can not be heard to complain of any act or omission occurring prior to December 22, 2009" because they waived any such claims in the forbearance agreement of December 22, 2009.

On January 27, 2011, the eve of the hearing on the bank's motion for partial summary judgment, the defendants filed a motion to file a further amended answer and counterclaim.  At the hearing on the amended fee application, as the primary justification for asserting that they had grounds for pursuing its counterclaim against the bank, Polsinelli argued that they sincerely believed that the debtor had a fraud claim against the bank.  An examination of the proposed amended counterclaim reveals, however, that none of the alleged events constituting fraud were alleged to have occurred **after** December 22, 2009, and any claim based on those events was thus barred by the forbearance agreement.  Aside from the acts regarding Ambris, both the counterclaim originally pled on September 3, 2010, and the proposed further amended counterclaim were barred by the forbearance agreement as based on acts that arose before the execution of the forbearance agreement.  Although Polsinelli was justified in exploring whether fraud claims could be adduced, it

48

should have become apparent that such claims would not fly as barred by the forbearance agreement. The work in preparing the further amended answer and counterclaim (for which $1,661.25 was billed) ought not be fully compensated, and I will disallow **$800.00** of that as relating to wasted work on fraud claims that were plainly barred. The time entries are as follows:

| Date | Description | Tmkpr | Hrs. | Amount |
|------|-------------|-------|------|--------|
| 1/20/2011 | Case law research and worked on the amended Answer and Counterclaims | JAHES | 2.00 | $   90.00 |
| 1/27/2011 | Conference with Mr. Heschmeyer re answer and counterclaim. | WDBLA | 1.75 | $ 857.50 |
| 1/27/2011 | Reviewed and revised amended complaint | LPDES | 2.00 | $ 500.00 |
| 1/27/2011 | Created motion to amend Answer and Counterclaims. Correspondence with Mr. Blakely and Ms. DeSantis regarding edits to the draft amended Answer and Counterclaims, and follow-up edits re: the same. Added additional facts suggesting fraud to the pleading. | JAHES | 4.75 | $ 213.75 |

## B. Attendance at the Hearing of January 28, 2011

At the hearing of January 28, 2011, Blakely, DeSantis-Then, and another counsel (whose time has not been billed) appeared as special counsel. The time entries for January 28, 2011, are:

49

| Date | Description | Tmkpr | Hrs | Amount |
|------|-------------|-------|-----|--------|
| 01/28/11 | Prepare for and attend Hearing in US Federal Bankruptcy Court. Plaintiff's Motion for Partial Summary Judgment on the Counterclaims of G.B. Herndon | WDBLA | 3.00 | 1,470.00 |
| 01/28/11 | Meeting with Mr. Heschmeyer re discovery and attend hearing. | WDBLA | 4.50 | 2,205.00 |
| 01/28/11 | Preparation for hearing. Attendance to hearings. Conferences re same. | LPDES | 4.50 | 1,125.00 |

Blakely has billed twice for attending the hearing of January 28, 2011.  That hearing, which started shortly after its scheduled starting time of 11:00 a.m. lasted until 1:32 p.m., a total of 2.5 hours, and with travel time of an estimated .5 hours, a total time of 3.0 hours.  I will allow the 4.50 hour time entry. (DeSantis-Then had a similar time entry of 4.50 hours).  I will disallow the remaining 3.00 hour time entry of **$1,470.00** as an apparent inadvertent duplicative billing.  There is no time entry of Mr. Heschmeyer for that date, suggesting that Blakely's meeting with him was not of any substantial length as would serve to justify Blakely's billing for 3.00 more hours than the 4.50 hours that DeSantis-Then billed for preparing for and attending the same hearing.

Polsinelli ought not have billed for two attorneys' appearances.  I will disallow the **$1,125.00** of fees sought with respect to DeSantis-Then's preparation for and attendance at the hearing.

## C. The Motion for Partial Summary Judgment

At the hearing of January 28, 2011, the court announced that
it would grant the Bank's motion for partial summary judgment,
ruling that both the first amended counterclaim filed on
September 3, 2010, as well as the proposed seconded amended
counterclaims ought to be dismissed.  *See* Dkt. No. 33 in Adv.
Proc. No. 10-10052.  The court further granted the motion to
strike the jury demand, as the right to a jury trial had been
knowingly waived.  The court also granted in part the motion for
leave to amend to permit the defendants to assert three
affirmative defenses.  *Id.*

None of the affirmative defenses ever panned out, and they
were not pursued further.  At the end of January 28, 2011, all
that really remained in dispute was the computation of interest
after December 7, 2009, and the amount of attorney's fees to
which the bank was entitled.  The issue of liability in the
adversary proceeding was not one justifying a substantial amount
of fees being incurred by Polsinelli.  The substantial fees
incurred after January 28, 2011, cannot be justified based on any
work on the issue of liability.

XI

THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY
WITH RESPECT TO FORECLOSING ON THE 12TH STREET PROPERTY

On September 30, 2010, the bank filed its motion for relief from the automatic stay to permit it to foreclose on the 12th Street property.  Dkt. No. 18.  The debtor filed an opposition to that motion on October 13, 2010.  Dkt. No. 44.  The opposition was short, consisting of admissions and denials of the allegations of the motion.  As of the filing of the opposition, the court had not ruled on the debtor's counterclaims in the adversary proceeding, and they potentially could have affected the outcome of the lift stay motion.  By the time of the hearing on the motion, however, that had changed.

The hearing on the lift stay motion was continued several times, and was finally held on February 28, 2011.  Prior to the hearing date, the debtor's bankruptcy counsel, Gins, spent 31.5 hours preparing for the hearing.  The time included time reviewing appraisals and preparing to cross-examine the bank's appraiser.  Gins attended the hearing and conducted it on behalf of the debtor.  Blakely and DeSantis-Then also appeared as counsel but did not examine witnesses or argue the motion.

At the time of the hearing, the remaining issues in the adversary proceeding (upon which Polsinelli was representing the debtor) were the calculation of interest from December 7, 2009, and the fixing of attorney's fees.  These issues were of no

52

consequence to the lift stay motion, and the bank did not present evidence regarding those issues at the lift stay hearing.

Polsinelli had worked with an appraiser in advance of the hearing, but by February 25, 2011, the bank had filed a paper making it evident that the appraiser was not qualified to express an opinion as to the value of the debtor's real property because he was not licensed to do so. Polsinelli recognized that the appraiser could not be used as a witness, and filed a motion on that basis to continue the hearing set for February 28, 2011.[44] The court denied that motion (argued by Gins) at the outset of the hearing.

The debtor's exclusivity period to file a plan had expired, and the debtor had filed no plan. The debtor had waived the protection of the automatic stay in the forbearance agreement, and there were only a few unsecured non-insider creditors all of whom held modest claims. The bank agreed to pay those modest claims, and the court upheld the waiver of the automatic stay, thus granting relief from the automatic stay.

It would be unreasonable to award full compensation for Blakely and DeSantis-Then's attending the hearing on the lift

---

[44]  It is questionable whether Polsinelli's work with the appraiser in advance of the hearing ought to be compensated. If the bank was able to discover that the appraiser was not licensed to appraise the property, Polsinelli ought to have been able to ascertain that fact. Nevertheless, I will assume in Polsinelli's favor that the appraiser affirmatively misled it, and will not disallow time spent dealing with the appraiser.

stay motion.  The hearing was handled in its entirety by Gins; by
the time of the hearing, all of the counterclaims in the
adversary proceeding had been dismissed; none of the remaining
issues in the adversary proceeding had any bearing on the motion
for relief from the automatic stay; and although the bank's
appraiser's testimony was heard, Gins had prepared for the cross
examination of that witness.  Polsinelli's attendance at the
hearing was unnecessary and duplicative except in one regard.
Because Polsinelli filed the motion for a continuance, I will
allow 2.00 hours of Blakely's time (for attending the
commencement of the hearing during which the motion to continue
was denied) at $480.00 per hour for a total of $960.00.  The
**$6,075.00** remainder of the $7,035.00 in fees sought for attending
the hearing will be disallowed.

XII

THE MOTION FOR RECONSIDERATION OF THE ORDER GRANTING THE BANK'S
SECOND MOTION FOR SUMMARY JUDGMENT

On February 15, 2011, the bank filed its second motion for
summary judgment, noting that in the December 22, 2009
forbearance agreement, the defendants had agreed to what amount
of principal and interest was owed as of December 7, 2009.  The
second motion for summary judgment merely sought to fix the
amount of interest accrued after December 7, 2009, and the amount
of attorney's fees owed.  An opposition to the motion was due
under LBR 9013-1 by March 4, 2011.  On April 28, 2011, when still

no opposition had been filed to the motion, the court signed an order granting the motion as unopposed.  The clerk entered the order on April 29, 2011.  On that same day, April 29, 2011, the defendants moved for reconsideration of that order on the basis that the parties had agreed that the defendants would have until April 29, 2011 to oppose the second motion for summary judgment. The time spent in seeking reconsideration of the order was a self-inflicted wound.  Before the deadline for an opposition, counsel should have filed a motion to enlarge the time to respond pursuant to the parties' agreement.  The court will disallow the **$4,515.00** in fees incurred on April 29, 2011 for the time entries listed as including the motion for reconsideration.

Curiously, there are time entries on April 27 and 28, 2011 (the two days *preceding* the entry of the order) for preparing "the Motion for Reconsideration."  If the "Motion for Reconsideration" addressed on April 27 and 28, 2011, was the one filed on April 29, 2011 seeking to vacate the order of April 29, 2011, the time obviously must be disallowed as a self-inflicted wound.  If it was for some other task, that task has not been identified: no other order was outstanding as to which reconsideration was sought by the debtor.  The **$3,062.50** in fees of Blakely for April 27 and 28, 2011, will be disallowed.

The bank responded to the motion for reconsideration on May 4, 2011, stating in pertinent part:

55

> While the bank has **no objection to the Court reconsidering its ruling**, Defendants have failed to raise any viable defense to the motion, and the Court's entry of summary judgment should be affirmed.

Dkt. No. 44 in the Adv. Proc. [Emphasis added]. On May 9, 2011, Polsinelli filed on behalf of the defendants a reply (with an accompanying affidavit of Blakely) addressing the existence of an agreement to extend time for the defendants to oppose the motion for summary judgment (but not addressing the bank's contention that summary judgment would still be appropriate upon reconsideration). *See* Dkt. No. 45 in the Adv. Proc. The filing was unnecessary: the bank expressly did not object to reconsideration, and did not contest that there was an agreement. Moreover, this was part of the same self-inflicted wound. Accordingly, the **$1,120.00** sought in the following time entries is disallowed:

| Date | Description | Tmkpr | Hrs | Amount |
|------|-------------|-------|-----|--------|
| 05/09/11 | Conversation with Dr. Herndon. | WDBLA | 0.50 | 245.00 |
| 05/09/11 | Conference re reply.  Preparation of documents.  Correspondence re pretrial conference.  Reviewed and revised document. | LPDES | 3.50 | 875.00 |

XIII

THE PRETRIAL CONFERENCE IN THE ADVERSARY PROCEEDING

The pretrial conference was held on May 17, 2011. It was set for 9:30 a.m., but (because of another matter on the calendar) was not called until 10:22 a.m. and concluded at

11:07 a.m. (as revealed by the times reflected by the recording

of the hearing).  Both Blakely and DeSantis-Then attended the

pretrial conference.  The remaining issue in the adversary

proceeding was attorney's fees and additional interest from

December 7, 2009.  There was no reason for two attorneys to

attend the pretrial conference, which was largely handled by

DeSantis-Then (except for Blakely's procedurally improper attempt

to address an issue not at stake in the adversary proceeding,

namely the imminent foreclosure sale of the debtor's real

property and the need of the debtor for injunctive relief).  The

court will disallow **$980.00** for 2.0 hours of Blakely's time (1.5

hours attending the conference and an estimated 0.5 hours

traveling to and from the hearing).

XIV

NEGOTIATING A FURTHER FORBEARANCE AGREEMENT;<br>
THE MOTION FOR A TEMPORARY RESTRAINING ORDER<br>
TO ENFORCE THAT FURTHER FORBEARANCE AGREEMENT

The bank and the debtor reached a further forbearance

agreement on May 26, 2011, that resulted in calling off a

foreclosure sale set for that date.  Between February 28, 2011

(when the court ruled that the automatic stay ought to be lifted)

and May 26, 2011 (the date of the further forbearance agreement),

there were no contested matters pending in the main bankruptcy

case, and the only matters requiring attention in the adversary

proceeding were the bank's second motion for summary judgment,

57

the filing of pretrial statements, and the pretrial conference of
May 17, 2011. It may be inferred that, otherwise, substantial
time between February 28, 2011, and May 26, 2011, was spent
attempting to reach such an agreement to stave off foreclosure.
Because Polsinelli represented the debtor prepetition regarding
its efforts to stave off foreclosure, I deem such work to fall
within Polsinelli's role as special counsel.[45]

When Polsinelli attempted to modify the terms of the May 26,
2011 agreement, the bank viewed that as a refusal to comply with
the agreement, and proceeded to set the foreclosure sale for
resumption on June 2, 2011. On June 1, 2011, the defendants
filed a motion for a temporary restraining order in the adversary
proceeding, relying on the agreement of May 26, 2011, and the
court held a hearing on June 2, 2011. Both Blakely and DeSantis-
Then attended the 11:00 a.m. hearing. Although the motion was
successful, it was unnecessary for both Blakely and DeSantis-Then
to attend the hearing. The hearing, set for 11:00 a.m., did not
conclude until 2:00 p.m., and, with travel time, DeSantis-Then
spent at least 3.5 hours with respect to attending the hearing.
The court will disallow 3.5 hours of DeSantis-Then's 6.10 hours

_____

[45] Nevertheless, as discussed in a later part of this
decision, many of the time entries during this period of time, as
elsewhere, are uninformative, such as to make it impossible to
ascertain whether the fees sought are reasonable.

of time for that date, or **$875.00.**[46]

XV

THE MOTIONS TO VACATE AND STAY THE ADVERSARY PROCEEDING JUDGMENT
AND TIME SPENT REVIEWING THE COURT'S AUGUST 8, 2011 ORDER

On June 23, 2011, the court entered in the adversary

proceeding a final judgment against all defendants.   The

defendants then filed on July 7, 2011, a motion to vacate the

judgment (*Defendants' Motion for Relief from Judgment and to

Alter or Amend Judgment*, Dkt. No. 63) on the basis of the Supreme

Court's decision in *Stern v. Marshall,* 131 S. Ct. 2594, 180 L.

Ed. 2d 475 (2011), decided June 23, 2011.  By an order of October

4, 2011, I denied the motion to vacate the judgment.   On October

18, 2011, the defendants filed a notice of appeal.  Eventually

the defendants sought a dismissal of their appeal, and the

district court dismissed it.

---

[46]  Blakely billed 6.00 hours for preparing for and
attending the hearing.  DeSantis-Then billed 6.10 hours for
"Preparation for hearing."  The court infers that the 6.10 hours
included DeSantis-Then's attendance at the hearing: if not, the
preparation would have started before 5:00 a.m. (that is, 6.1
hours before Blakely left for the 11:00 a.m. hearing).

**A. The Motion to Stay the Adversary Proceeding Judgment**

With the motion to vacate the judgment, the defendants filed a motion to stay the judgment (*Defendants' Motion to Temporarily Lift Final Judgment Pending Resolution of the Motion for Relief from Judgment and to Alter or Amend Judgment*, Dkt. No. 62). The debtor did not need a stay of the judgment: the automatic stay of 11 U.S.C. § 362(a) already barred collection of that judgment from the debtor. Nevertheless, the judgment was entered not only as to the debtor but also as to the two guarantors who did not have the benefit of the automatic stay. Because the motion to vacate presented a serious question as to the two guarantors, I proceeded by an order of August 8, 2011, to grant the requested temporary stay of the judgment and thereby enforcement of that judgment against the guarantors.

The time spent on the motion for a stay benefitted the guarantors, not the debtor, and they are liable for the fees that work generated. As to the debtor, however, the fee application failed to show, as required by the United States Trustee's Guidelines, the "necessity and benefit to the estate" of that work (*see* 28 C.F.R. Pt. 58, App. A, (b)(4)), and failed to include a narrative statement concerning "how the attorney's efforts" in seeking a stay "have contributed to the estate" as required by LBR 2016-1(a)(4). At the hearing on November 16, 2012, the court expressed its concern about the benefit to the

60

estate of various tasks, and particularly the *Stern v. Marshall*
motion that did not affect the debtor directly. *See* November 16,
2012 Hearing Sheet (Dkt. No. 185). Nevertheless, at the April
24, 2013 hearing, during which the bank raised this same concern,
Polsinelli did not present any evidence of the benefit to the
estate of the motion for a stay.

**B.   The Motion to Vacate the Adversary Proceeding Judgment**

The motion to vacate the judgment at best presented an issue
worth pursuing as to the guarantors and not as to the debtor.
The bankruptcy court indisputably had authority to decide the
bank's claim against the debtor. The counterclaims were raised
as defenses to the claim of the bank, and, accordingly, it was
plain that, under *Stern v. Marshall,* the court had authority, as
part of the claims adjudication process, to adjudicate those
counterclaims because they were asserted by the debtor in
defending against the bank's claim. The motion to vacate had a
chance of success only with respect to the guarantors, not the
debtor.

Moreover, vacating the judgment would not have affected the
lifting of the automatic stay against foreclosure. The court had
already granted relief from the automatic stay in February to
permit the bank to proceed to foreclose against the 12th Street
property. For purposes of a lift stay hearing, it is not
necessary to enter a binding adjudication of a debtor's

61

counterclaims against the estate.   Indeed, counterclaims cannot

be the subject of a binding adjudication when raised as a defense

in a lift stay proceeding.   *See BHI Int'l, Inc. v. Horizon Hill*

*Jefferson Condo., LLC (In re BHI Int'l, Inc.)*, 2012 WL 2501034

(Bankr. D.D.C. June 28, 2012).   The bank's motion for partial

summary judgment in the adversary proceeding ruling demonstrated

that, for purposes of the motion for relief from the automatic

stay in the main case, there were no serious counterclaims that

might weigh against granting relief from the automatic stay, and

operated to dispose of that issue for purposes of the lift stay

motion, without the necessity of a final judgment adjudicating

the bank's claim.

Whether the judgment stood against the debtor, or not, was

really of no practical consequence to the debtor.   In contrast,

whether the judgment stood with respect to the two guarantors of

the debtor's debt had real consequences as to them; unless a

judgment was outstanding as to them, the bank could not collect

on their guarantees of the debtor's debt.

Even as to the guarantors, vacating the judgment would only

be postponing the inevitable.   Aside from the *Stern v. Marshall*

issue, there was no legitimate issue with respect to the

propriety of the grant of summary judgment.   When the defendants

took an appeal from the judgment, the only issue asserted on

appeal was the *Stern v. Marshall* issue.   The defendants did not

62

challenge the correctness otherwise of the court's having granted

summary judgment against them.[47]  As in the case of time spent in

seeking a stay of the judgment, Polsinelli has not presented any

evidence to demonstrate any benefit to the estate in seeking to

vacate the judgment after the court and the bank flagged that as

an issue.

Accordingly, I will not allow any fees for work to seek to

vacate the final judgment performed after entry of that judgment.

For the period from June 23, 2011 through July 20, 2011, it

appears Polsinelli was working on the motion to vacate the

judgment and the motion to stay the judgment (both in the

adversary proceeding).[48]  However, because Polsinelli largely

---

[47]  The defendants' statement of issues on appeal recited
these issues:

      1. Did the Bankruptcy Court have the statutory
authority to adjudicate the Defendants' Counterclaims?
      2. Did the Bankruptcy Court have the constitutional
authority to adjudicate the Defendants' Counterclaims?
      3. Did the Bankruptcy Court abuse its discretion in
entering final judgment against the Defendants on their
Counterclaims?

(Dkt. No. 89 in the Adv. Proc.).  Delaying the inevitable would
have ultimately hurt the defendants.  The interest rate that was
accruing on the debt was at a much higher rate than the judgment
interest rate, such that if the defendants' appeal had succeeded,
they would eventually be hurt by the delay of the inevitable
because of the greater amount of interest they would owe.

[48]  During this time period, no motions were awaiting
disposition in--and the debtor was not preparing any motions for
filing in--the main bankruptcy case.  It was not until July 21,
2011, that the bank filed its motion to have the lifting of the
automatic stay applied to the modular units.

failed (as required by the United States Trustee's Guidelines and
this court's LBRs) to distinguish between work performed in the
main case and work performed in the adversary proceeding, it has,
for the most part, failed to prove how much time was spent on the
motions to vacate and to stay the judgment versus other work.

During this same time frame, it appears that Polsinelli was
also working on the debtor's securing funds with which to avoid a
foreclosure sale, including working on a "letter of credit."
Because Polsinelli had represented the debtor prepetition with
respect to attempts in the civil action to stop the foreclosure
sale, I deem that work to fall within the scope of its
representation of the debtor as special counsel.

Polsinelli has sought approval of fees of $46,428.75 for the
period of June 23, 2011, through July 20, 2011, and Polsinelli
has failed to show that the bulk of the time entries were not
devoted to working on the two motions addressing the final
judgment, work that is not compensable.  Most of the time entries
for June 23, 2011, through July 20, 2011, must be disallowed
because they either:

> (1) clearly related to dealing with the adversary
> proceeding judgment, a matter of practical concern to
> only the guarantors, or
>
> (2) are so vague that it is impossible to
> determine whether the work was on compensable tasks or

64

was, instead, on the adversary proceeding judgment or
on other tasks that ought not be compensated (*e.g.*,
tasks not falling within the authorization to act as
special counsel, or not calculated to confer a benefit
on the estate); or

(3) involve improper lumping of non-compensable
tasks with other tasks.

I will allow $1,500.00 for general review of the judgment.
For example, Polsinelli ought to have reviewed the judgment to
make sure the court's calculation of interest was correct.  It
also should have considered whether to advise the debtor to
appeal based on some error in the two summary judgment rulings
that led to the judgment (that is, an appeal based on grounds
other than the issue of authority of the bankruptcy judge to
issue a final judgment), but it ultimately never pursued an
appeal based on any such error.

For the same period of June 23 through July 20, 2011, I will
also allow $4,897.00 for time entries that can be identified as
relating to other compensable work.[49]  Accordingly, $6,397.00 of
compensation sought for work performed from June 23, 2011,
through July 20, 2011, is allowed and **$40,031.75** is disallowed.

---

[49]  That $4,897.00 consists of the first time entry for
$24.50; a July 1, 2011 time entry for $425.00; a July 5, 2011
time entry for $650.00; a July 8, 2011 time entry for $2,450.00;
and a July 12, 2011 time entry for $1,347.50.

Specifically, the time entries for June 23 through July 20,
2011, are these (with footnotes discussing some of the grounds
for disallowance, and indicating when time is allowed):

| Date | Description | Tmkpr | Hrs. | Amount |
|------|-------------|-------|------|--------|
| 06/23/11 | Pull and review Security Agreement.[50] | WDBLA | 0.05 | 24.50 |
| 06/23/11 | Review of the Court Order, the deadlines, and case law.[51] | WDBLA | 2.75 | 1,347.50 |
| 06/23/11 | Calls and exchanged emails with L. DeSantis. Obtained document. Analyzed issue re: same.[52] | JLSWI | 0.40 | 170.00 |
| 06/23/11 | Conference. Conference with Mr. Switzer. Preparation of document. Conference with Mr. Blakely. Reviewed and revised document. Correspondence. Review of order. Correspondence re: same. | LPDES | 1.80 | 450.00 |
| 06/23/11 | Reviewed Court's final judgment and order. Spoke to Mr. Blakely re: same. | JAHES | 0.35 | 15.75 |
| 06/24/11 | Correspondence to Mr. Ginns [sic] regarding document. Receipt of the Judgment and review of Options. Meeting with Mr. Heschmeyer and Ms Descants [sic] regarding options. Call to Dr. Herndon and discussion of the Judgment | WDBLA | 3.00 | 1,470.00 |

---

[50]   This $24.50 is allowed.

[51]   As noted already, I have allowed $1,500.00 for general
review of the judgment and review of whether some error warranted
an appeal.  Accordingly, for ease of calculation, I will consider
this time entry as allowed (and will not reduce it to the
appropriate rate of $480/hr) and will also consider $152.50 of
the following entry to be allowed.

[52]   I will treat $152.50 as allowed.  See the previous note.

| 06/24/11 | Correspondence following a meeting. Discussion.  Review the memorandum of Mr. Heschmeyer. Meeting and discussion. | WDBLA | 2.75 | 1,347.50 |
|---|---|---|---|---|
| 06/24/11 | Communication re bill of sale. Conference.[53] | LPDES | 2.30 | 575.00 |
| 06/24/11 | Research.  Began preparing memorandum to Mr. Blakely and Ms. DeSantis re: same. | JAHES | 3.45 | 155.25 |
| 06/25/11 | Correspondence with Mr. Aronson. | WDBLA | 0.75 | 367.50 |
| 06/25/11 | Correspondence with Mr. Heschmeyer and with Mr. Aronson. | WDBLA | 0.50 | 245.00 |
| 06/27/11 | Meeting with Ms. DeSantis. | WDBLA | 0.50 | 245.00 |
| 06/27/11 | Correspondence. Conference. Additional Correspondence. | LPDES | 0.80 | 200.00 |
| 06/27/11 | Research and memo to Mr. Blakely and Ms. DeSantis re: same | JAHES | 1.05 | 47.25 |
| 06/28/11 | Numerous phone calls and conversation. Reviewed information re: case law. Meeting with Mr. Heschmeyer concerning memorandum. Meeting with Ms. DeSantis regarding the same. Call to Dr. Herndon. | WDBLA | 6.00 | 2,940.00 |
| 06/28/11 | Correspondence. Conference re same. Research. Conference regarding strategy to move forward. Research re: same. | LPDES | 7.00 | 1,750.00 |
| 06/29/11 | Multiple calls to Dr. Herndon. Call to Mr. Sulzbach. Additional phone call and discussions. Meeting with Mr. Heschmeyer. | WDBLA | 6.00 | 2,940.00 |
| 06/29/11 | Call with Bill Blakely. | CLCAR | 0.40 | 120.00 |
| 06/29/11 | Call with W. Blakely and L. DeSantis. exchanged emails re: same.  Listened to message and read emails from W. Blakely re same. | JLSWI | 0.30 | 127.50 |

---

[53]  The "bill of sale" may relate to taking steps to avoid a foreclosure, but the topic of the "Conference" is not described. Accordingly, the time entry is disallowed based on lumping.

| 06/29/11 | Preparation of motion. Research re same. Conference.  Correspondence. | LPDES | 2.60 | 650.00 |
|---|---|---|---|---|
| 06/30/11 | Conference call with Mr. Heschmeyer and Ms. DeSantis. | WDBLA | 1.00 | 490.00 |
| 06/30/11 | Call with Dr. Herndon. Conference call.  Meeting with Ms. DeSantis and Mr. Heschmeyer. Multiple calls with Dr. Herndon. follow-up calls.  Calls to Ms. DeSantis regarding same. Meeting. Review Order.  Review the memo by Mr. Heschmeyer. Call to Dr. Herndon. | WDBLA | 5.00 | 2,450.00 |
| 06/30/11 | Conference. Correspondence re same. Review of motion. | LPDES | 1.00 | 250.00 |
| 07/01/11 | Meeting with Mr. Heschmeyer and Ms. DeSantis. Conference call with Mr. McKnight. Review the options. E-mail to Dr. Herndon and discussions of alternatives. | WDBLA | 3.00 | 1,470.00 |
| 07/01/11 | Correspondence re investor letter. Conference re same. Correspondence re line of credit.[54] | LPDES | 1.70 | 425.00 |
| 07/05/11 | Numerous conversations and meetings to discuss strategy[55] | WDBLA | 6.00 | 2,940.00 |
| 07/05/11 | Conference with Mr. Blakely. Correspondence re letter of credit. Conference re fax.[56] | LPDES | 2.60 | 650.00 |

---

[54]   This time entry appears to relate to working out a settlement with the bank to avoid foreclosure, and the $425.00 is allowed.

[55]   This time entry for "Numerous conversations and meetings to discuss strategy" is another example of a time entry that is too vague to permit the court to ascertain whether it related to compensable work or, instead, non-compensable work.

[56]   This time entry for $650.00 is allowed.

| 07/06/11 | Conference call with Mr. McKnight. Call to Dr. Herndon. Meeting with Ms. DeSantis and Mr. Heschmeyer.[57] | WDBLA | 6.00 | 2,940.00 |
|---|---|---|---|---|
| 07/06/11 | Review and revised motion. | LPDES | 5.80 | 1,450.00 |
| 07/07/11 | Many conversations and correspondence regarding case. Meeting with Ms. DeSantis and Mr. Heschmeyer[58] | WDBLA | 6.00 | 2,940.00 |
| 07/08/11 | Many phone calls dealing with property. Review the correspondence.  Calls with Dr. Herndon on same. Call to the GB Ellis representative.[59] | WDBLA | 5.00 | 2,450.00 |
| 07/12/11 | Review the final details of a proposed transaction. Review the final offers and review the Adams Bank's modification Agreement and discussions on the options available to Dr. Herndon.[60] | WDBLA | 2.75 | 1,347.50 |
| 07/13/11 | Review of opposition. Correspondence re same. | LPDES | 0.60 | 150.00 |
| 07/13/11 | Research re: docketing of response date for reply brief. | JAHES | 0.10 | 4.50 |

---

[57]   Because Ms. DeSantis and Mr. Heschmeyer were working on the two motions, Blakely's meeting with them presumably dealt with the two motions.  The balance of the time entry is so vague that it must be disallowed.  In any event, because of lumping, that balance of the time entry would have to be disallowed any way.

[58]   The two motions were filed on July 7, 2011, and it may be inferred that Blakely did the final review of those motions before they were filed.  This time entry for $2,940.00 is disallowed.

[59]   This time entry for $2,450.00 is allowed.

[60]   This time entry for $1,347.50 is allowed.

| 07/14/11 | Review the Pleadings by Mr. Aronson. Review also the Pleadings Opposing our Motion For Lift of Stay and Jmt.  Meet with Ms. DeSantis. | WDBLA | 4.00 | 1,960.00 |
|---|---|---|---|---|
| 07/14/11 | Correspondence re insurance. Conference with Mr. Blakely re same.  Conference with Mr. Heschmeyer re opposition. | LPDES | 1.00 | 250.00 |
| 07/15/11 | Conference with B. Blakely. | JEBIR | 0.40 | 160.00 |
| 07/15/11 | Numerous conversations with Dr. Herndon. Meetings with Ms. DeSantis and Mr. Heschmeyer on same | WDBLA | 5.50 | 2,695.00 |
| 07/15/11 | Conference re motion for reconsideration. Conference re lifting of stay. Communication with Mr. Gins re same. | LPDES | 2.10 | 525.00 |
| 7/16/11 | Correspondence re: Capital Street Oasis Project | WDBLA | 0.30 | 147.00 |
| 07/18/11 | Meet with Mr. Heschmeyer. | WDBLA | 0.30 | 147.00 |
| 07/18/11 | Call with L. DeSantis to discuss automatic stay and litigation issues. | JLSWI | 0.40 | 170.00 |
| 07/18/11 | Correspondence re transcript. Conference with Mr. Switzer. Conference with client re case. | LPDES | 4.20 | 1,050.00 |
| 07/19/11 | Numerous conversations regarding case. | WDBLA | 5.00 | 2,450.00 |
| 07/19/11 | Conference re motion. Communication to Mr. Switzer re motion. | LPDES | 0.60 | 150.00 |

| 07/20/11 | Reply reviewed, edited and filed regarding the Reply to Opposition to Lift Stay.[61]  Review correspondence from Mr. Aronson and comments on same. | WDBLA | 2.00 | 980.00 |
| 07/20/11 | Correspondence re matrix chart. Conference with Mr. Aronson re property. Review of reply motion.[62] | LPDES | 2.40 | 600.00 |

## C. Review of the Court's August 8, 2011 Order Granting a Temporary Stay of the Judgment

On August 8, 2011, the court issued its order granting a temporary stay of its judgment in the adversary proceeding, but making clear that the order did not affect the right of the bank to foreclose based on the lifting of the automatic stay in the main case.  The work reviewing that order, again, was of practical concern to the guarantors, not the debtor.  The bank already had relief from the automatic stay of § 362(a), and its right to foreclose would be unaffected by the outcome of the defendants' motion to vacate the adversary proceeding judgment; moreover, the debtor had no need for a stay of the judgment with respect to other collection efforts against it (as the § 362(a)

---

[61]  The time entries sometimes erroneously refer to the motion to stay the judgment as a Lift Stay motion.  The "Reply to Opposition to Lift Stay" in this 07/20/11 time entry for WDBLA was the reply to the opposition to the defendants' motion for a stay of the judgment pending the outcome of the motion to vacate the judgment.  The bank's motion to amend the order lifting the automatic stay of 11 U.S.C. § 362(a) (to include relief from that stay with respect to the modular units) was not filed until July 21, 2011, the day after this 07/20/11 time entry.

[62]  The reply to the opposition to the motion to vacate the judgment was filed on July 20, 2011.

automatic stay still applied in that regard).  In any event, no
explanation has been given why the August 8, 2011 order would
have required any substantial review time on behalf of the
debtor.

Accordingly, the time entries set forth below, which total
**$4,502.50**, will be disallowed with respect to such non-
compensable work.  To the extent that non-compensable work is
lumped with compensable work, the lumping of the time entries
results in Polsinelli having failed to demonstrate the amount of
compensable work.  The amount billed in those time entries will
be disallowed as to all of the work performed.

| Date | Description | Tmkpr | Hrs. | Amount |
|------|-------------|-------|------|--------|
| 08/08/11 | Review the Order. Call to Dr. Herndon, and meeting with Mr. Heschmeyer and Ms. DeSantis. Call to Richard Ginns. Call to and discussion with Dr. Herndon on same | WDBLA | 2.00 | 980.00 |
| 08/08/11 | Discussion with Mr. Kelly re property.  Meeting with Mr. Heschmeyer and Ms. DeSantis.[63] | WDBLA | 2.50 | 1,225.00 |

---

[63] This time entry is an example of vagueness and lumping,
and Polsinelli at that time could have been dealing with the
August 8 order and the bank's *Motion to Convert or for
Appointment of Chapter 11 Trustee*, work that is not compensable
for reasons, respectively, already discussed or to be discussed.

72

| 8/08/11 | Conference with Mr. Blakely re filing. Conference with Mr. Gins re stay. Preparation of opposition. Correspondence re same. Review of order. Correspondence re order.[64] | LPDES | 3.60 | 900.00 |
|---------|------|-------|------|--------|
| 08/09/11 | Discussion of the Order to Lift Stay. Meeting with Ms. DeSantis and Mr. Heschmeyer regarding the Order.[65] | WDBLA | 2.75 | 1,347.50 |
| 08/10/11 | Conference re court order. | LPDES | 0.10 | 25.00 |
| 08/11/11 | Correspondence re order. | LPDES | 0.10 | 25.00 |

XVI

WORK ON OPPOSING THE BANK'S JULY 21, 2011 MOTION TO
AMEND THE LIFT STAY ORDER TO INCLUDE THE MODULAR UNITS;
WORK ON POSSIBLE SETTLEMENT TO AVOID FORECLOSURE SALE

As part of the May 26, 2011, agreement, Twelfth Street

Partners, L.L.C. granted the bank a security interest in the

modular units, and title to the modular units was transferred to

---

[64]   The "order" discussed in this time entry presumably was
the order of August 8, 2011, regarding staying the adversary
proceeding judgment (but not foreclosure).  On August 8, 2011,
the debtor filed its opposition to the motion to amend the lift
stay order to include the modular units, so the "filing" referred
to in this time entry is not likely that filing, and is instead,
perhaps, the *Motion to Convert or for Appointment of Chapter 11
Trustee*.  The "opposition" being prepared perhaps was the
opposition to the bank's *Motion to Convert or for Appointment of
Chapter 11 Trustee*.  For reasons discussed later, that work is
not compensable.  The time entry, in any event, is an example of
impermissible lumping and vagueness, and I will disallow the time
entry on that alternative ground as well.

[65]   The only recently issued order as of August 9, 2011, was
the order of August 8, 2011, staying the adversary proceeding
judgment.  As in the case of WDBLA's time entry for 07/20/11,
this 08/09/11 entry apparently refers to the stay of the judgment
as an order to "Lift Stay."

the debtor.  On July 21, 2011, the bank filed a motion seeking to
amend the order granting relief from the automatic stay to
include the modular units as property against which the bank was
permitted to proceed, and that motion was heard and granted on
August 15, 2011.  A foreclosure sale ensued on August 31, 2011.
Work on the motion to amend the lift stay order will be treated
as falling within the bailiwick of Polsinelli as special counsel.

During the period of work on the motion (July 21 to August
15, 2011) and until the foreclosure sale on August 31, 2011, it
appears that Polsinelli was also working on a possible settlement
with the bank to avoid foreclosure.[66]  I will treat that as
falling within the scope of Polsinelli's work as special counsel.

Nevertheless, Polsinelli's time entries for this period of
July 21 through August 31, 2011, are often a jumble or vague,
failing to distinguish between work on tasks that is compensable
versus work that is not compensable, making it difficult to
ascertain the precise amount of fees devoted to compensable work.
During that time frame, Polsinelli was performing:

- work on the adverse judgment that was entered against
  the defendants in the adversary proceeding on June 23,

---

[66]  See, for example, the time entries of July 27, 2011
("Review of Claim Transfer Agreement received from Mr. Aronson
[bank's counsel]"); August 3, 2011 ("settlement"), and August 17,
2011 ("offer").  An August 22, 2011 time entry ("Correspondence
with investors") may reflect an attempt to raise funds to stave
off foreclosure.

2011, including evaluating the August 8, 2011 order
granting a temporary stay of the judgment (work that is
not compensable for reasons already discussed); and

• work on the bank's *Motion to Convert or for Appointment
of Chapter 11 Trustee*, which was filed on August 1,
2011, and in particular on fruitless efforts to obtain
discovery from the bank (work that is not compensable
for reasons discussed later).

As already is evident in the discussion of work on the
August 8, 2011 order, and as will be evident in the discussion of
the work on the *Motion to Convert or for Appointment of Chapter
11 Trustee*, the lack of clarity in the time entries for the
period of August 1, 2011 to August 31, 2011, often cuts against
Polsinelli with respect to what would otherwise be compensable
time working on opposing the motion to amend the lift stay order.

The hearing on the motion to amend the lift stay order was
held on August 15, 2011, and both Blakely and DeSantis-Then
appeared at the hearing.  DeSantis-Then handled the hearing on
behalf of the debtor, but Blakely was the more experienced
attorney at the hearing, and the hearing was one that warranted
the presence of an attorney with substantial experience.  The
estate, however, ought not bear the expense of two attorneys at
the hearing when Blakely could have handled the hearing by
himself.  Although it is commendable that a younger associate at

75

a law firm acquire experience actively handling a hearing, the bankruptcy estate is entitled to be charged no more than what the senior attorney would have charged if he alone had handled the hearing.  Attorney training is an expense the law firm should bear, not the client.  The court will disallow **$500** for DeSantis-Then's 2.0 hours relating to the August 15, 2011 hearing (1.5 hours plus an estimated 0.5 hours travel).

The court granted the bank's motion to extend the relief from the automatic stay to the modular units by an order entered on August 15, 2011.  A foreclosure sale of the 12th Street real property and the modular units ensued on August 31, 2011.

XVII

ATTENDING THE FORECLOSURE SALE

Both Blakely and DeSantis-Then attended the foreclosure sale of August 31, 2011.  I will disallow DeSantis-Then's **$500.00** time entry in that regard: no showing was made that it was necessary to have two attorneys attend the foreclosure sale.

XVIII

WORK ON THE MOTION TO CONVERT
OR TO APPOINT CHAPTER 11 TRUSTEE, AND WORK ON
OTHER MATTERS DURING THE PERIOD OF AUGUST 1 TO 31, 2011

On August 1, 2011, the bank filed its *Motion to Convert or for Appointment of Chapter 11 Trustee*.  Dkt. No. 112.  By then, the court had granted relief from the automatic stay to permit the bank to foreclose upon the 12th Street real property and on

August 15, 2011, the court granted the bank's pending motion to amend the lift stay order to include the modular units. After the foreclosure sale was held on August 31, 2011, the only issues left in the case were (1) the adversary proceeding judgment, work that was only for the benefit of the guarantors, and that is not compensable for reasons already discussed, and (2) the *Motion to Convert or for Appointment of Chapter 11 Trustee*, work that did not fall within the bailiwick of special counsel work. None of Polsinelli's work after August 31, 2011 will be compensated, and work on the *Motion to Convert or for Appointment of Chapter 11 Trustee* beforehand will not be compensated either.

The *Motion to Convert or for Appointment of Chapter 11 Trustee* asserted that:

> the business is operating at a loss and is administratively insolvent, there is no prospect of a plan of reorganization, the property of the Debtor [the modular units] is not properly insured, Debtor continues to use corporate funds to pay personal expenses of its shareholder, and conversion or appointment of a trustee is in the best  interests of the creditors . . . .

The *Motion to Convert or for Appointment of Chapter 11 Trustee* went to the debtor in possession's conduct of the case, and was one for Gins as bankruptcy counsel to handle, not one for Polsinelli as special counsel to handle under § 327(e).

Polsinelli nevertheless worked on three aspects of the motion: responding to the interrogatories the bank had served inquiring into the use of the debtor's funds to pay expenses of

Dr. Herndon or other entities; attempting unsuccessfully to obtain discovery from the bank; and preparing for and attending the hearing on the motion to convert. None of this work should be compensated as it did not constitute special counsel work.

The unsuccessful attempt to obtain discovery from the bank was a wasted effort and is disallowed on that ground as well. To elaborate, the unsuccessful attempt to obtain discovery from the bank unfolded as follows. After the bank filed its *Motion to Convert or for Appointment of Chapter 11 Trustee* on August 1, 2011, and after relief from the automatic stay had already been granted on August 15, as to both the real property and the modular units, Polsinelli, beginning on August 17, 2011, began looking into obtaining discovery from the bank regarding its claim, and on August 19, 2011, it served a notice to take deposition on the bank. No contested matter was then pending other than the bank's *Motion to Convert or for Appointment of Chapter 11 Trustee*. By then, the court had already entered a judgment against the debtor fixing the amount of the bank's claim, and it was obvious that *Stern v. Marshall* would have no impact on that judgment against the debtor (even if it might have an impact on the judgment against the guarantors, the debtor's co-defendants). In the litigation of the motion to convert, that judgment was going to be issue-preclusive with respect to the amount owed the bank.

78

Polsinelli nevertheless proceeded to attempt to have the bank appear for a deposition and to produce records relating to its claim.  The court rejected the debtor's emergency motion to compel because Polsinelli failed to proceed in a procedurally correct fashion.  *See Memorandum Decision and Order Re Emergency Motion to Compel* (Dkt. No. 129 entered August 29, 2011).  The court denied the debtor's further motion to compel because the debtor was seeking discovery related to the bank's claim, an issue already adjudicated by the judgment in the adversary proceeding.  *See Memorandum Decision And Order Denying Debtor's Corrected Motion To Compel Production Of Documents In Response To Subpoena* (Dkt. No. 146 entered October 27, 2011).

For the period of August 1 through August 31, 2011, the work on the  *Motion to Convert or for Appointment of Chapter 11 Trustee* is disallowed.  The pertinent time entries for this period appear below (with amounts that are disallowed appearing in bold letters):[67]

---

[67]  Various time entries for 08/08/11 to 08/11/11 were dealt with earlier in addressing work on the order granting a temporary stay of the adversary proceeding judgment.  Those time entries are not repeated in this table.

| Date | Description | Tmkpr | Hrs. | Amount |
|------|-------------|-------|------|--------|
| 08/01/11 | Discussion the opposition to the Motion. Call with Mr. Switzer. Conference with Mr. Heschmeyer.[68] | WDBLA | 3.00 | **1,470.00** |
| 08/01/11 | Call with B. Blakely re status of issues with bank. | JLSWI | 0.10 | **42.50** |
| 08/01/11 | Correspondence re deposition. Correspondence re meeting. Correspondence re case.[69] | LPDES | 0.35 | **87.50** |
| 08/02/11 | Discussion of the case.[70] | WDBLA | 1.00 | **490.00** |
| 08/03/11 | Correspondence with Dr. Herndon and Mr. Aronson case foreclosure. Correspondence with Richard Ginns [sic] on a meeting schedule issue. Conversation with Mr. Heschmeyer on case.[71] | WDBLA | 0.05 | 24.50 |
| 08/03/11 | Call with L. DeSantis re status of litigation and settlement; reviewed lender's motion to amend order granting relief from stay; call with B. Blakely and L. DeSantis to discuss same.[72] | JLSWI | 0.50 | 212.50 |

[68]   The "Motion" in this 08/01/11 time entry presumably is the *Motion to Convert or for Appointment of Chapter 11 Trustee* filed on that date.

[69]   The descriptions in this $87.50 time entry are too vague to allow the court to determine whether it relates to compensable work.

[70]   "Discussion of the case" is too vague a time entry to permit discernment of whether the task addressed is work that is compensable.

[71]   The $24.50 for this time entry is allowed as likely pertaining to settlement efforts.

[72]   This $212.50 time entry is allowed.

| 08/03/11 | Conference with Mr. Heschmeyer re motion to amend lifting of the stay. Correspondence with Mr. Switzer re amending the stay. Conference with Mr. Switzer re motion.[73] | LPDES | 1.90 | 475.00 |
|---|---|---|---|---|
| 08/04/11 | Meeting with Dr. Herndon | WDBLA | 2.00 | **980.00** |
| 08/04/11 | Conference with client and co-counsel re case. Preparation of praecipe. Correspondence re same.[74] | LPDES | 3.20 | 800.00 |
| 08/05/11 | Preparation of reply.[75] | LPDES | 0.20 | 50.00 |
| 08/09/11 | Correspondence to Mr. Aronson. Correspondence to Mr. Switzer.[76] | WDBLA | 0.05 | 24.50 |
| 08/09/11 | Exchanged emails with B. Blakely re case.[77] | JLSWI | 0.10 | 42.50 |
| 08/10/11 | Conversation with Mr. Heschmeyer regarding case. | WDBLA | 0.05 | 24.50 |
| 08/11/11 | Preparation for the hearing on Monday [August 15, 2011] and discussion re: case.[78] | WDBLA | 3.00 | 1,470.00 |

---

[73]   This $475.00 time entry is allowed.

[74]   The praecipe was the one filed on August 4, 2011, noting the additional agreed time for the debtor to respond to the motion to amend the lift stay order.   This $800.00 time entry is allowed.

[75]   The "reply" in this Friday August 5, 2011 time entry is treated as actually the opposition to the motion to amend the lift stay order, an opposition filed on Monday August 8, 2011. This $50.00 time entry is allowed.

[76]   This $24.50 time entry is allowed as relating to settlement efforts.

[77]   This $42.50 time entry is allowed based on the context furnished by the preceding time entry.

[78]   This $1,470.00 time entry is allowed.

| 08/12/11 | Correspondence and telephone call with Mr. Kelly. Meeting with Mr. Heschmeyer and Ms. DeSantis on same.[79] | WDBLA | 1.25 | 612.50 |
|---|---|---|---|---|
| 08/12/11 | Preparation for hearing. Conference with Mr. Gins.[80] | LPDES | 0.60 | 150.00 |
| 08/15/11 | Hearing on the Motion to Lift Stay regarding the Modules.  Post hearing meeting and discussion on the issue of proceeding. Call to Mr. Kelly. Meeting with Mr. Kelly.[81] | WDBLA | 6.50 | 3,185.00 |
| 08/15/11 | Preparation for hearing. Attendance to hearing. Conference re hearing. Conference with Mr. Gins.[82] | LPDES | 6.50 | 1,625.00 |
| 08/16/11 | Proposed meeting with Dr. Herndon. Meeting with Mr. Kelly.  Review documents. Meeting with Mr. Heschmeyer and Mr. Kelly.[83] | WDBLA | 4.00 | **1,960.00** |

---

[79]  This entry of Friday August 12, 2011, is treated as relating to the hearing of August 15, 2011, and the $612.50 is allowed.

[80]  This $150.00 time entry is allowed.

[81]  This $3,185.00 time entry is allowed.

[82]  This time entry for $1,625.00 has been reduced elsewhere by $500 based on Blakely also being at the hearing.  There are no further disallowances of this time entry.

[83]  As of this time entry for August 16, 2011, the only contested matter remaining was the *Motion to Convert or for Appointment of Chapter 11 Trustee*.  Although some time entries suggest that some work was on settlement negotiations, the time entries during this period often include non-compensable work on the *Motion to Convert or for Appointment of Chapter 11 Trustee*. To the extent that the time entry is for work on the adversary proceeding judgment, a matter of concern to the guarantors, not the debtor, the time is also not compensable.  The entire time entry is disallowed based on improper lumping and vagueness.

| 08/16/11 | Conference with Mr. Blakely re judgment. Review of checklist. Preparation for meeting. Meeting at property. Meeting with Carl. | LPDES | 4.00 | **1,000.00** |
|----------|---|---|---|---|
| 08/17/11 | Call with Dr. Herndon. Correspondence with Mr. Kelly. Correspondence with Ms. DeSantis. Conference call with Mr. Kelly. | WDBLA | 3.75 | **1,837.50** |
| 08/17/11 | Call with L. DeSantis and J. Heschmeyer re potential issues and defenses. | JLSWI | 0.20 | **85.00** |
| 08/17/11 | Conference with Mr. Blakely re offer. Conference with Mr. Blakely re call. Conference with Mr. Kelly. Conference with Mr. Switzer.[84] | LPDES | 3.30 | **825.00** |
| 08/18/11 | Correspondence regarding a site investigation. Discussion with Mr. Kelly.[85] | WDBLA | 1.50 | 735.00 |
| 08/18/11 | Conference with litigation team. Review of discovery materials. Preparation of document requests. Conference with Mr. Gins re same.[86] | LPDES | 2.90 | **725.00** |
| 08/19/11 | Review the Notice of Deposition and Schedule "A" for discovery | WDBLA | 0.75 | **367.50** |

---

[84] The "offer" referred to in this last time entry for 08/17/11 presumably is part of settlement negotiations with the bank to stave off foreclosure, but the preceding time entry evidences that Ms. DeSantis was working on the pending contested matter, the *Motion to Convert or for Appointment of Chapter 11 Trustee*, which was not compensable special counsel work. Based on lumping, the time entry is disallowed.

[85] It may be inferred that the "site investigation" mentioned in this time entry related to settlement efforts, and the $735.00 is allowed.

[86] The only contested matter pending was the *Motion to Convert or for Appointment of Chapter 11 Trustee*, and time on that is not compensable. Accordingly, this 08/18/11 time entry and the 08/19/11 time entries are disallowed.

| 08/19/11 | Conference with Mr. Blakely. Preparation of exhibit A. Correspondence re same. Review of notice of deposition. | LPDES | 1.10 | **275.00** |
|---|---|---|---|---|
| 08/22/11 | Numerous phone calls to the office and Ms. DeSantis. Call to Dr. Herndon regarding foreclosure.[87] | WDBLA | 1.00 | **490.00** |
| 08/22/11 | Correspondence with surveyors. Correspondence with investors. Conference with Mr. Gins.  Review of letter from Aronson.[88] | LPDES | 1.00 | 250.00 |
| 08/23/11 | Correspondence re drawings.[89] | LPDES | 0.10 | 25.00 |
| 08/24/11 | Call with Patrick Kelly. | WDBLA | 0.25 | **122.50** |
| 08/24/11 | Correspondence re motion to compel. Correspondence with Mr. Kelly. Conference with Mr. Gins re deposition. Preparation of response to Aronson re the deposition . Conference re same. Conference with Mr. Kelly. Correspondence with Mr. Blakely. | LPDES | 2.30 | **575.00** |
| 08/25/11 | Responded to email from Ms. DeSantis and conference re motion to compel; researched sample motion and forwarded same to Lauren. | JLSWI | 0.20 | **85.00** |
| 08/25/11 | Conference with Mr. Blakely re deposition. Communication with Mr. Gins re same. Conference with Mr. Switzer re motion to compel. Conference with Mr. Kelly. Preparation of Motion to compel. | LPDES | 3.30 | **825.00** |

---

[87]   This time entry is disallowed based on lumping.

[88]   This $250.00 time entry is allowed as relating to settlement efforts.

[89]   It may be inferred that the "drawings" mentioned in this time entry were related to settlement efforts and the $25.00 is allowed.

| 08/26/11 | Conference with Mr. Gins re motion. Reviewed and revised motion. Filing of same. Conference with Dr. Herndon. | LPDES | 3.30 | **825.00** |
|----------|---|---|---|---|
| 08/29/11 | Conference with Mr. Heschmeyer concerning the foreclosure. | WDBLA | 1.50 | 735.00 |
| 08/29/11 | Conference with Mr. Gins re deposition. Preparation re deposition.  Preparation of correspondence re no show to the deposition. Review of motion. Review of order. Conference re same. | LPDES | 6.60 | **1,650.00** |
| 08/30/11 | Conference re court's order. Correspondence to Mr. Gins re 2004 examination. Research. | LPDES | 2.45 | **612.50** |

The disallowed time entries in this table for August 1 to 30, 2011, total **$15,330.00**.[90]

XIX

WORK AFTER AUGUST 31, 2011

The **$36,963.25** in fees sought for work performed after August 31, 2011, will be disallowed.  First, the lift stay litigation for which Polsinelli was employed was at an end. Second, the other task for which it was employed as special counsel, the adversary proceeding, was still ongoing, but the remaining work on the adversary proceeding was for the benefit of the guarantors, not the debtor.  In addition, reimbursement of the **$255** filing fee for the notice of appeal from the judgment in the adversary proceeding will be denied as well because that was

---

[90]   This does not include the $500 previously disallowed.

for the benefit of the guarantors.

To elaborate, the following summarizes the work in the adversary proceeding after August 31, 2011.  On October 4, 2011, the court issued its decision denying the motion to vacate, reasoning that *Stern v. Marshall* was inapplicable as to the guarantors based on consent.  The work reviewing that decision was of practical concern to the guarantors, not the debtor, whose 12th Street real property and modular units had been sold at foreclosure on August 31, 2011, and whose liability plainly could be adjudicated by the bankruptcy court.  The continued pursuit of an appeal of the judgment was of no practical benefit to the debtor, which had no chance of success on appeal and which had lost its significant assets, but of possible benefit to the guarantors as a successful appeal would stay collection of the debt from them.

On October 4, 2011, the court also lifted the temporary stay of its judgment.  The automatic stay of 11 U.S.C. § 362(a) barred execution of the judgment against the debtor's property, but not against the guarantors' property.  On October 20, 2011, the bank began obtaining writs of attachment against property of the guarantors.  Those writs were of direct concern to the guarantors, not the debtor, and the fees billed for work addressing the writs will not be compensated.

XX

VAGUENESS AND LUMPING OF WORK IN OTHER TIME
ENTRIES; EXCESSIVE CONFERENCES BETWEEN ATTORNEYS

Vagueness of time entries and lumping of work within single time entries often makes it impossible to determine whether Polsinelli's remaining time entries should be allowed.

As seen already, Polsinelli often took on work that was not special counsel work, and that was instead work that fell within Gins' province as the debtor's bankruptcy counsel charged with representing the debtor in possession in conducting the case. *See, e.g.*, *supra* note 20. Such work may have been of benefit to the two guarantors that Polsinelli was representing, but it is not work compensable by the bankruptcy estate, as § 327(e) expressly provides that a special counsel may not represent the debtor in possession "in conducting the case." Vagueness of time entries often makes it impossible to discern whether Polsinelli was performing work that amounted to representing the debtor "in conducting the case" for which it ought not be compensated.

A similar problem exists with respect to work for which I have held that the compensation should be capped. Compensation for work on removing the civil action and work on obtaining authorization to be employed as special counsel have been capped. If a vague time entry related to such work, the compensation sought ought not be allowed as the court has already allowed a capped amount.

Finally, with only vague indications of the work performed, it is often difficult to assess whether the amount of time spent was reasonable. Far too often the time entries refer to communications without giving "sufficient detail to identify . . . the nature of the communication" (as expressly required by the United States Trustee's Guidelines that Polsinelli promised to follow).

Similarly, the time entries reflect many conferences between attorneys without supplying any justification for such a large number of conferences between attorneys, and often failing to "identify the subject of the . . . conference" (as required by the United States Trustee's Guidelines). In addition, there are billings for two attorneys attending meetings with the bank or the clients, without Polsinelli having furnished any justification (as expressly required by the United States Trustee's Guidelines) for two attorneys attending the conference. For example, for April 7, 2011, DeSantis-Then billed for "Preparation for conference with the bank. Conference with the bank," billing 3.00 hours or $750, but Blakely billed for preparation for and attendance at the same meeting. DeSantis-Then's billing of **$750** for April 7, 2011 will be disallowed.

## A. Vague or Lumped Time Entries in October 2010

Many other time entries include vagueness and lumping, making it impossible to find that the time spent was reasonable.

*See Role Models Am., Inc.*, 353 F.3d at 972 ("[B]ecause the time records contain so little information, we have no basis for concluding that hours that appear to be excessive and redundant are in fact anything other than excessive and redundant."). Illustratively, time entries for the invoice submitted for October 2010 include these vague or lumped time entries:

| Date | Description | Tmkpr | Hrs. | Amount |
|------|-------------|-------|------|--------|
| 1/31/10 | Meeting with Mr. Heschmeyer.[91] | WDBLA | 0.50 | 242.50 |
| 10/01/10 | Conference with Dr. Herndon re responding to bankruptcy. | LPDES | 0.10 | 25.00 |
| 10/04/10 | Correspondence to Mr. Switzer and Ms. DeSantis. | WDBLA | 0.50 | 245.00 |
| 10/04/10 | Reviewed and responded to numerous emails from B. Blakely and L. DeSantis re bankruptcy. | JLSWI | 0.10 | 42.50 |
| 10/05/10 | Call with L. DeSantis re bankruptcy issues; reviewed bankruptcy order forwarded by same.[92] | JLSWI | 0.10 | 42.50 |

---

[91] If the time entry was actually for January 31, 2010, it was prepetition work that is not compensable, and Polsinelli was not even hired by the debtor until the summer of 2010. It is billed at an hourly rate that differs from WDBLA's other billings for October 2010, thus suggesting that it indeed was for January 31, 2010. (October 31, 2010, was a Sunday, and it is doubtful that a meeting was held on that date.) In any event, the time entry is so vague that it is disallowed.

[92] The court's order of October 5, 2010, related to an order striking various schedules and related papers. Filing schedules and related papers was a task for Gins as a task relating to conducting the bankruptcy case, a task that § 327(e) barred Polsinelli from handling as special counsel.

| 10/06/10 | Correspondence re order.  Review of Order.  Re-docketing of matter.[93] | LPDES | 0.30 | 75.00 |
| 10/12/10 | Conference call with Mr. Switzer. | WDBLA | 0.70 | 343.00 |
| 10/12/10 | Conference call with Ms. DeSantis re strategy. | WDBLA | 1.20 | 588.00 |
| 10/12/10 | Call with L. DeSantis to discuss bankruptcy status; conference call with B. Blakely and L. DeSantis to discuss same; met with J. Soh re status and possible work to be completed; analyzed legal and procedural issues. | JLSWI | 2.40 | 297.50 |
| 10/12/10 | Conference with Mr. Gins re opposition.  Conference with Mr. Switzer re bankruptcy proceedings.  Correspondence re same.  Follow up conference with Mr. Blakely re litigation strategy. | LPDES | 2.40 | 600.00 |
| 10/13/10 | Conference with Ms. DeSantis. | WDBLA | 0.30 | 98.00 |
| 10/13/10 | Conference with Dr. Herndon re meeting.  Conference with Mr. Blakely re same. | LPDES | 0.20 | 50.00 |
| 10/14/10 | Meeting and correspondence with Mr. Gins & Ms, [sic] DeSantis. | WDBLA | 1.50 | 735.00 |
| 10/14/10 | Worked on matters relating to bankruptcy case and motions for relief from stay. | JLSWI | 0.20 | 85.00 |
| 10/14/10 | Correspondence with Mr. Blakely re foreclosure.  Conference with Mr. Gins and Mr. Blakely re case and adversary proceeding.[94] | LPDES | 1.50 | 375.00 |
| 10/15/10 | Call with L. DeSantis re bankruptcy and strategy issues. | JLSWI | 0.50 | 212.50 |

---

[93] This 10/06/10 entry relates to the same order of October 5, 2010, as mentioned in the 10/05/10 time entry, and thus involved work that special counsel was barred from handling.

[94] There was no adversary proceeding pending as of October 14, 2010, so this must have related to the anticipated removal of the civil action that later became the adversary proceeding. Compensation for work on removal has been capped.

90

| 10/15/10 | Correspondence with Mr. Gins re next steps in the case.  Conference with Mr. Switzer re case. | LPDES | 1.00 | 250.00 |
| 10/18/10 | Call with Mr. Switzer. | WDBLA | 0.10 | 49.00 |
| 10/18/10 | Call with B. Blakely re status. | JLSWI | 0.10 | 42.50 |
| 10/20/10 | Review correspondence from Ms. DeSantis. | WDBLA | 0.40 | 196.00 |

These time entries total $4,594.00.  I am disallowing the first time entry for $242.50.  The remaining time entries thus total $4,351.50.  Polsinelli was performing compensable work in some of these time entries.  (For example, the 10/12/10 time entry for LPDES includes "Conference with Mr. Gins re opposition" when the pending motions to be opposed were the two motions for relief from the automatic stay).  But with lumping and vagueness, it is impossible to fix an accurate amount of compensable time. I have already fixed a capped value for the work on removal and the application to be employed as counsel.  Because Polsinelli bore the burden of proof, I will allow only $2,000.00 of the $4,351.50 based on a rough estimate of what should have been the time spent on compensable tasks.  *See In re Affinito & Son, Inc.*, 63 B.R. 495, 498 (Bankr. W.D. Pa. 1986) ("This Court should not be required to guess the amount of time expended on each activity; neither should we be expected to indulge in extensive labor to justify a fee for an attorney who has not done so himself.").  Accordingly, a total of **$2,594.00** of the $4,594.00 in the time entries appearing in the table above is disallowed.

**B. Vague or Lumped Time Entries for March through May 2011**

A substantial part of the time entries for March 1, 2011
(the day after the court decided the lift stay motion) to May 26,
2011 (the day a new forbearance agreement was reached) likely
related to attempting to reach a forbearance agreement.
Nevertheless, the time entries during that period include ones
that fail to include reasonable detail enabling a determination
of whether the time spent on the tasks was reasonable.  For
example, these are some of the more egregious or larger time
entries of that character during that period:

| Date | Description | Tmkpr | Hrs. | Amount |
|------|-------------|-------|------|--------|
| 05/06/11 | Correspondence and communication with Dr. Herndon and her office. | WDBLA | 2.50 | 1,225.00 |
| 05/11/11 | Call with Brent Herndon. | WDBLA | 2.25 | 1,102.50 |
| 05/13/11 | Numerous exchanges with Dr. Herndon.  Reviewed document. Several calls with Dr. Herndon. | WDBLA | 4.00 | 1,960.00 |
| 05/16/11 | Correspondence.  Review document. Conference with Mr. Gins.  Review of document. | LPDES | 8.10 | 2,025.00 |

The billings for time entries in this time period of March 1,
2011, to May 26, 2011, exceed $97,000, and only a relatively
small portion of those billings have been disallowed on other
grounds.[95]  Based on the lack of reasonable detail for time
entries for at least a third of the of the amounts billed in this

---

[95]   In particular, the time entries for this period total
$97,635.00.  The amount already disallowed is $5,024.00.

time period, I will disallow **$13,000.00** of the time entries in
this time period (in addition to amounts already disallowed on
other grounds).

**C. Vague or Lumped Time Entries for June 7, 2011 to June 21, 2011**

Many of the time entries for the period of June 7, 2011, to
June 21, 2011, are similarly often lacking in reasonable detail
(*e.g.*, 2.00 hours for "Numerous calls and follow-up
conversation;" 6.00 hours for "Review of the outstanding issues
for resolution.  Phone calls.  Follow-up call to Dr. Herndon and
GB Herndon's office.  Call to Ms. DeSantis;" 4.50 hours for
"Calls and multiple conversations.  Meetings with Ms. Descants
[sic] and Mr. Heschmeyer on same.").  The ones lacking reasonable
detail exceed $8,000.  I will disallow an additional **$4,000** with
respect to these time entries.

XXI

SANCTIONS IMPOSED AT HEARING OF AUGUST 1, 2013

Pursuant to this court's ruling at a hearing of August 1,
2013, and the Order entered August 2, 2013, the court will impose
a $5,000 sanction on Polsinelli Shughart.  The $5,000 is composed
of a $2,500 sanction for not timely filing a Rule 2016(b)
statement[96] and a $2,500 sanction for failing to timely disclose

---

[96]   The Rule 2014(a) declaration filed in January 2011 (four
months after the case commenced) made a Rule 2016(b) statement,
but the Rule 2016(b) statement was due 14 days after the case
commenced in September 2010.

93

that Twelfth Street LLC gave Polsinelli a deed of trust in March

2012 as security for payment of fees for the Adams Bank

litigation (for which the debtor was jointly liable) and fees for

defense of Twelfth Street LLC in the bankruptcy litigation, fees

for which the debtor was jointly liable, at least to the extent

the court upholds the fees sought as an administrative claim.

## XXII

### COMPUTER RESEARCH

The bank has objected to Polsinelli's request for

reimbursement $5,140.87 for computer assisted legal research.  I

overrule this objection.  The debt owed the bank exceeded

$8,000,000.  The issues in the lift stay hearings were of a

character deserving legal research.  Although the issues in the

adversary proceeding ultimately proved to be straightforward,

Polsinelli was justified in researching whether it could find

meaningful legal support for the counterclaims the debtor

asserted.

## XXIII

### COMPUTATION OF AMOUNTS ALLOWABLE

Polsinelli's application seeks $345,785.83 in fees and

$9,175.10.  However, at the hearing on November 15, 2012,

Polsinelli submitted amended time sheets with certain time

entries and expenses stricken.  Nevertheless, Polsinelli did not

recalculate the amount of fees and expenses it seeks based on

these stricken time entries.  This court has calculated that the
amended time sheets show that Polsinelli seeks $344,672.90 in
fees and $7,242.19 in expenses.  The court arrived at these
numbers as follows:

| Exhibit Docket No. | Fees Sought | Expenses Sought |
|---|---|---|
| 171 | $        – | $        – |
| 171-1 | $    6,570.50 | $        – |
| 171-2 | $   49,782.00 | $       43.63 |
| 171-3 | $   29,332.00 | $    2,012.30 |
| 171-4 | $   19,670.50 | $      511.26 |
| 171-5 | $   31,820.00 | $      259.05 |
| 171-6 | $   52,257.00 | $    1,922.65 |
| 171-7 | $   46,305.15 | $    1,550.39 |
| 171-8 | $   39,587.00 | $      341.44 |
| 171-9 | $   32,385.50 | $      101.43 |
| 171-10 | $    4,282.25 | $      214.57 |
| 171-11 | $   24,477.75 | $      285.47 |
| 171-12 | $    8,203.25 | $        – |
| **Total** | **$ 344,672.90** | **$    7,242.19** |

The court has disallowed a total of **$180,617.62** in fees and
**$255.00** in expenses.  The following table summarizes the
disallowances and the section of this decision that discusses the
disallowances.

| Basis for Disallowance | Amount Disallowed | Section of Decision |
|---|---|---|
| Fees relating to conflict checks, representation agreement, and special counsel application | $ 10,997.00 | Section VI |
| Excessive time filing notice of pendency | $   350.00 | Section VII |

95

| Basis for Disallowance | Amount Disallowed | Section of Decision |
|---|---|---|
| Excessive time on removal issue | $ 11,727.00 | Section VII |
| Time spent opposing the Emergency Motion for Appointment of Ch. 11 Trustee | $ 5,388.50 | Section VIII |
| Jury trial issue | $ 6,338.37 | Section XIX |
| Further amended answer and counterclaim | $ 800.00 | Section X.A. |
| Attendance at January 28, 2011 hearing | $ 2,595.00 | Section X.B. |
| Attendance at February 28, 2011 hearing | $ 6,075.00 | Section XI |
| April 29, 2011 work on the Motion for Reconsideration | $ 4,515.00 | Section XII |
| April 27 & 28, 2011 | $ 3,062.50 | Section XII |
| May 9, 2011 time entries re reply | $ 1,120.00 | Section XII |
| Pretrial Conference | $ 980.00 | Section XIII |
| TRO hearing | $ 875.00 | Section XIV |
| June 23 – July 20, 2011 | $ 40,031.75 | Section XV.B. |
| August 8, 2011 | $ 4,502.50 | Section XV.C. |
| August 15, 2011 hearing | $ 500.00 | Section XVI |
| Foreclosure hearing, August 31, 2011 | $ 500.00 | Section XVII |
| August 1 – August 30, 2011 | $ 15,330.00 | Section XVIII |
| Fees sought after August 31, 2011 | $ 36,963.25 | Section XIX |
| April 7, 2011 | $ 750.00 | Section XX |

| Basis for Disallowance | Amount Disallowed | Section of Decision |
|---|---|---|
| October 2010 vague or lumped entries | $ 2,594.00 | Section XX.A. |
| March 1 - May 26, 2011 | $ 13,000.00 | Section XX.B. |
| June 7 - June 21, 2011 | $ 4,000.00 | Section XX.C. |
| Blakely time entries | $ 2,622.75 | Section IV |
| Late 2016(b) Statement and failure to disclose deed of trust | $ 5,000.00 | Section XXI |
| **TOTAL** | **$ 180,617.62** | |

Accordingly, Polsinelli will be allowed $164,055.28 in fees and $6,987.19 in expenses, for a total of $171,042.47.  A separate order follows.

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.